GOSPEL ARMY *v.* LOS ANGELES ET AL.

No. 103. Argued February 6, 7, 1947.—Decided June 9, 1947.

*Robert H. Wallis* argued the cause and filed a brief for appellant.

*John L. Bland* argued the cause for appellees. With him on the brief were *Ray L. Chesebro* and *Bourke Jones.*

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

This is a companion case to *Rescue Army* v. *Municipal Court of the City of Los Angeles,* 331 U. S. 549, decided today. Because we dismiss the appeal in this cause for jurisdictional reasons, the facts may be shortly stated.

The Gospel Army is an incorporated religious organization. The trial court found that it is "engaged exclusively in the promulgation, by literature and word of mouth, of its religious beliefs, by and through its auxiliaries, and in the procuring of donations in the form of money and articles of value in the prosecution and furtherance of its religious activities." More particularly, its activities consist of conducting a mission, distributing religious books without charge, giving aid to the poor. It collects salvage which it either sells in a second-hand goods store,[1]

---

[1] The money received from the sales is used to meet the cost of operating the store, including compensation paid to the manager and

distributes directly to the poor, or sends to a salvage mill.[2]

The Gospel Army instituted this suit to enjoin the enforcement of certain ordinances of the City of Los Angeles on the ground that they violate its religious liberty under the Constitutions of California and the United States.[3]

After trial the Superior Court of Los Angeles County broadly concluded:

> "That a permanent injunction should issue herein restraining and enjoining the Defendants and each of them and any and all persons, associations, departments under whom said Defendants or any of them may be employed or acting and any and all persons, associations or departments who may be acting or claiming by, through or under said Defendants, or any of them from the further interference and threatened acts, which would in any way prevent the free exercise of a religious liberty of said Plaintiff."

From this decision an appeal was taken to the District Court of Appeal of the Second Appellate Division, Division Two, and the cause was then transferred to the Supreme Court of California. That court held, three judges dissenting, that the Superior Court's action in granting the injunction was erroneous. 27 Cal. 2d 232. Some, if not all, of the ordinances in suit were sustained as constitutional. On appeal to this Court determination of jurisdiction was postponed to the merits.

---

to those who solicit contributions. Whatever remains goes into the corporate treasury.

[2] Ninety per cent of the money received for the goods sent to the salvage mill is paid to the drivers of trucks used by the Gospel Army to collect the salvage. The other ten per cent goes into the treasury.

[3] It is unnecessary to consider precisely what ordinances were involved in this case or were sustained by the California Supreme Court. See *Rescue Army* v. *Municipal Court*, 331 U. S. 549.

The jurisdictional difficulties arise from the form of the California Supreme Court's judgment. That court ended its opinion with the statement, "The judgment is reversed." Its judgment was in the same form: "It is Ordered, Adjudged, and Decreed by the Court that the Judgment of the Superior Court in and for the County of Los Angeles in the above entitled cause, be and the same is hereby reversed." In California an unqualified reversal, "that is to say, without direction to the trial court," is effective to remand the case "for a new trial and places the parties in the same position as if the case had never been tried." *Erlin* v. *National Union Fire Ins. Co.,* 7 Cal. 2d 547, 549; *Stearns* v. *Aguirre,* 7 Cal. 443, 448; *Central Sav. Bank* v. *Lake,* 201 Cal. 438, 443; *Richfield Oil Corp.* v. *State Board of Equalization,* 329 U. S. 69, 72; 2 Cal. Jur. § 590.

Under § 237 of the Judicial Code, 28 U. S. C., § 344, only "final judgments" of state courts may be appealed to this Court. And it frequently has been said that for a judgment of an appellate court to be final and reviewable for this purpose it must end the litigation by fully determining the rights of the parties, so that nothing remains to be done by the trial court "except the ministerial act of entering the judgment which the appellate court . . . directed." *Department of Banking* v. *Pink,* 317 U. S. 264, 267. Thus, where the effect of the state court's direction is to grant a new trial, the judgment will not be final.

Increasingly this Court has become less formal in the matter of final judgments. It is no longer the rule that the face of the judgment is determinative of whether it is final.[4] Today "the test is not whether under local rules

---

[4] For cases incorporating the old "face of the judgment" rule, see, *e. g., Bruce* v. *Tobin,* 245 U. S. 18; *Schlosser* v. *Hemphill,* 198 U. S. 173; *Haseltine* v. *Central Bank,* 183 U. S. 130. There was strong dissent to the abandonment of the rule. See the separate opinion

of practice the judgment is denominated final . . . but rather whether the record shows that the order of the appellate court has in fact fully adjudicated rights and that that adjudication is not subject to further review by a state court . . . ." *Department of Banking* v. *Pink*, 317 U. S. at 268.

Thus, this term in *Richfield Oil Corp.* v. *State Board of Equalization, supra,* despite the fact that the Supreme Court of California had reversed a judgment without directions, we determined on the entire record and upon an independent investigation of California law that the judgment was final for the purposes of § 237. In the first place, the facts had been stipulated and, so far as appeared, the stipulation would have been available and controlling upon a second trial. In the second place, the suit was one for a refund of a tax and under California law only those grounds presented in the prior claim for refund could be urged in the suit. The opinion stated: "Since the facts have been stipulated and the Supreme Court of California has passed on the issues which control the litigation, we take it that there is nothing more to be decided." 329 U. S. at 73–74.

In this case, however, the facts have not been stipulated, nor are there any special procedural restrictions. Thus, under California law, the Gospel Army on the second trial to which it is entitled may amend its complaint and present new facts. "Such a reversal remands the case for a new trial and places the parties in the same position as if the case had never been tried. . . . Of course, upon a retrial the decision of the appellate court becomes the law of the case upon the facts as then

of McReynolds, J., in *Clark* v. *Williard,* 292 U. S. 112, 129. And for general discussion, cf. Boskey, Finality of State Court Judgments under the Federal Judicial Code (1943) 43 Col. L. Rev. 1002, 1003–1008; Robertson and Kirkham, Jurisdiction of the Supreme Court of the United States (1936) 54–57.

548

presented. But that law must be applied by the trial court to the evidence presented upon the second trial. 'It is settled beyond controversy that a decision of this court upon appeal, as to a [matter] of fact, does not become the law of the case.' " *Erlin* v. *National Union Fire Ins. Co.,* 7 Cal. 2d at 549.

We cannot assume that the Supreme Court of California would hold the ordinances in question constitutional no matter what facts might be presented upon a second trial. Indeed, experience demonstrates that particularly in constitutional cases issues turn upon factual presentation.

Accordingly, the case does not fall within the specific holding of the *Richfield Oil* case, for, although the modern rule is that in determining whether the state court's remand is for a new trial this Court will examine both the judgment and the opinion as well as other circumstances which may be pertinent, *Department of Banking* v. *Pink, supra; Richfield Oil Corporation* v. *State Board of Equalization, supra,* this does not mean that in the ordinary case we will disregard the effect of the judgment under the local law. In this case, for example, the effect of the judgment under state practice is to remand the case for a new trial. Nothing in the opinion of the court is to the contrary. We cannot assume that the state court made an error in its judgment, clerical or otherwise. If the parties had thought so, they could have moved to have it amended. Indeed, that course may still be open to them.

The appeal is dismissed.