377 U.S. 386 (1964)
HUDSON DISTRIBUTORS, INC.,
v.
ELI LILLY & CO.
No. 490.
Supreme Court of United States.
Argued April 30, 1964.
Decided June 1, 1964.[*]
APPEAL FROM THE SUPREME COURT OF OHIO.
Myron N. Krotinger argued the cause for appellant in both cases. With him on the briefs were Leonard Lane and Morton L. Stone.
Ralph M. Carson argued the cause for appellee in No. 489. With him on the brief was Henry L. King.
Everett I. Willis argued the cause for appellee in No. 490. With him on the brief was Louis S. Peirce.
Briefs of amici curiae, urging affirmance, were filed by James A. Gorrell for Corning Glass Works et al., and by R. W. Kilbourne for Ohio Hardware Association et al.
MR. JUSTICE GOLDBERG delivered the opinion of the Court.
These appeals raise the question of whether the McGuire Act, 66 Stat. 631, 15 U. S. C. §§ 45 (a) (1)-(5), permits the application and enforcement of the Ohio Fair Trade Act against appellant in support of appellees' systems of retail price maintenance. For the reasons stated below, we hold that the Ohio Act, as applied to the facts of these cases, comes within the provisions of the McGuire Act exempting certain resale price systems from the *387 prohibitions of the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 et seq.
The two appeals, one involving The Upjohn Co. and one involving Eli Lilly & Co., were considered together in the Ohio courts.[1] For simplicity we state only the facts of the Lilly case. Appellant, Hudson Distributors, Inc., owns and operates a retail drug chain in Cleveland, Ohio. Appellee, Eli Lilly & Co., manufactures pharmaceutical products bearing its trademarks and trade names. Lilly sells its products directly to wholesalers and makes no sales to retailers. Hudson purchases Lilly brand products from Regal D. S., Inc., a Michigan wholesaler.
In June 1959, the Ohio Legislature enacted a new Fair Trade Act, Ohio Revised Code §§ 1333.27-1333.34. Subsequently Lilly sent letters to all Ohio retailers of Lilly products, including Hudson, to notify them of Lilly's intention to establish minimum retail resale prices for its trademarked products pursuant to the new Ohio Act and to invite the retailers to enter into written fair-trade contracts. More than 1,400 Ohio retailers of Lilly products (about 65% of all the retail pharmacists in Ohio) signed fair-trade contracts with Lilly. Hudson, however, refused to enter into a written contract with Lilly and ignored the specified minimum resale prices. Lilly formally notified Hudson that the Ohio Act required Hudson to observe the minimum retail resale prices for Lilly commodities. Hudson, nevertheless, continued to purchase and then to resell Lilly products at less than the stipulated minimum retail resale prices.
Hudson thereupon filed a petition in the Court of Common Pleas for Cuyahoga County, Ohio, for a judgment declaring the Ohio Act invalid under the State Constitution *388 and federal law. Lilly answered and cross-petitioned for enforcement of the Ohio Act against Hudson. The Court of Common Pleas held the Ohio Act unconstitutional under the State Constitution. On appeal, the Court of Appeals for Cuyahoga County, after discussing the federal and state legislation, 117 Ohio App. 207, 176 N. E. 2d 236, reversed the trial court and entered a judgment declaring that the Ohio Act was not "in violation of the Constitution of the State of Ohio nor of the Constitution of the United States . . . ." The court remanded the case "for further proceedings according to law with respect to the cross-petition . . . ."[2] On further appeal, the Supreme Court of Ohio affirmed[3] the *389 judgment of the Court of Appeals.[4] 174 Ohio St. 487, 190 N. E. 2d 460. This Court noted probable jurisdiction. 375 U. S. 938, 939.
Hudson contends that the provisions of the Ohio Act under which Lilly established minimum resale prices are not authorized by the McGuire Act, 66 Stat. 631, 15 U. S. C. §§ 45 (a) (1)-(5).[5] Section 2 of the McGuire Act provides in pertinent part as follows:
"Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, . . . when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State . . . ."
Section 3 of the McGuire Act reads as follows:
"Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for *390 sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby."
Before the enactment of the McGuire Act, this Court in 1951 in Schwegmann Bros. v. Calvert Distillers Corp., 341 U. S. 384, considered whether the Miller-Tydings Act, 50 Stat. 693, 15 U. S. C. § 1, removed from the prohibition of the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 et seq., a state statute which authorized a trademark owner, by notice, to require a retailer who had not executed a written contract to observe resale price maintenance. Respondents in that case argued that since the Sherman Act outlawed "contracts" in restraint of trade and since the Miller-Tydings amendment to the Sherman act excepted "contracts or agreements prescribing minimum prices for the resale" of a commodity where such contracts or agreements were lawful under state law, the Miller-Tydings Act therefore immunized all arrangements involving resale price maintenance authorized by state law. 341 U. S., at 387. After examining the history of the Miller-Tydings Act, the Court concluded that Congress had intended the words "contracts or agreements" as contained in that Act to be used "in their normal and customary meaning," id., at 388, and to cover only arrangements whereby the retailer voluntarily agreed to be bound by the resale price restrictions. The Court held therefore that the state resale price maintenance law could not be applied to nonsigners"recalcitrants . . . dragged in by the heels and compelled to submit to price fixing." Id., at 390. The Court stated that:
"It should be remembered that it was the state laws that the federal law was designed to accommodate. Federal regulation was to give way to state *391 regulation. When state regulation provided for resale price maintenance by both those who contracted and those who did not, and the federal regulation was relaxed only as respects `contracts or agreements,' the inference is strong that Congress left the noncontracting group to be governed by preexisting law." Id., at 395.
Shortly after the Schwegmann decision, Congress passed the McGuire Act,[6] 66 Stat. 631, 15 U. S. C. §§ 45 (a) (1)-(5). The Report of the House Committee on Interstate and Foreign Commerce, which accompanied the McGuire Act, declared that:
"The primary purpose of the [McGuire] bill is to reaffirm the very same proposition which, in the committee's opinion, the Congress intended to enact into law when it passed the Miller-Tydings Act . . . , to the effect that the application and enforcement of State fair-trade lawsincluding the nonsigner provisions of such lawswith regard to interstate transactions shall not constitute a violation of the Federal Trade Commission Act or the Sherman Antitrust Act. This reaffirmation is made necessary because of the decision of a divided Supreme Court in Schwegmann v. Calvert Distillers Corporation *392 (341 U. S. 384, May 21, 1951). In that case, six members of the Court held that the Miller-Tydings Act did not exempt from these Federal laws enforcement of State fair trade laws with respect to nonsigners. Three members of the Court held that the Miller-Tydings Act did so apply.
"The end result of the Supreme Court decision has been seriously to undermine the effectiveness of the Miller-Tydings Act and, in turn, of the fair-trade laws enacted by 45 States. H. R. 5767, as amended, is designed to restore the effectiveness of these acts by making it abundantly clear that Congress means to let State fair-trade laws apply in their totality; that is, with respect to nonsigners as well as signers." (Emphasis added.) H. R. Rep. No. 1437, 82d Cong., 2d Sess., at 1-2.
This authoritative report evinces the clear intention of Congress that, where sanctioned by a state fair-trade act, a trademark owner such as Lilly could be permitted to enforce, even against a nonsigning retailer such as Hudson, the stipulated minimum prices established by written contracts with other retailers.[7]
Without disputing this interpretation of the McGuire Act, Hudson argues that the Ohio Act as interpreted by the Ohio courts reaches beyond the exemptive terms of the federal Act by permitting the maintenance of resale prices "by notice alone" where no contract has been entered into between the owner of the trademark and any retailer. Hudson emphasizes that the Ohio courts sustained the Ohio Act under the State Constitution on the theory that Hudson, simply by acquiring Lilly's products *393 with notice of the stipulated prices, impliedly contracted to observe the minimum prices. This implied contract theory was deemed necessary by the Ohio Legislature and by the Ohio courts to satisfy the State Constitution which had recently been held to invalidate the enforcement of resale prices against nonsigners. Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 167 Ohio St. 182, 147 N. E. 2d 481 (1958). Whatever merit there may be in the argument that the logic of the Ohio implied contract theory would apply to prices set by notice alone and without any conventional or express contracts, on the facts of the present case we need not and do not consider whether a state statute so applied would involve "contracts or agreements" in the sense in which those terms are used in the McGuire Act.[8] The undisputed facts show that Lilly had established a system of resale price maintenance involving written contracts with some 1,400 Ohio retailers. Section 1333.29 (A) of the Ohio Act authorizes the establishment of minimum prices through such contracts. Under these circumstances the fact that the Ohio law, as construed for purposes of assessing its validity under the State Constitution, regards Hudson as a "contractor" (or "implied contractor") rather than as a nonsigner does not control the application and effect of the federal statutethe McGuire Act. Section 3 of the federal Act plainly upholds "any right or right of action created by any statute . . . in effect in any State . . . which in substance" permits enforcement of resale prices prescribed in contracts whether or not the violating seller was a party to those contracts. For the purposes of § 3 of the McGuire Act, therefore, it is clear that these cases involve the requisite contracts with retailers,[9] that, regardless *394 of whether Hudson itself entered into "contracts" within the meaning of the McGuire Act, Hudson was at least a nonsigner, and that under such circumstances Congress plainly intended "to let State fair-trade laws apply. . . with respect to nonsigners as well as signers." H. R. Rep. No. 1437, 82d Cong., 2d Sess., at 2. Accordingly we hold that the Ohio Act, as applied to the facts of these cases, comes within the terms of the McGuire Act.
Hudson also argues that the Ohio statute can be read to authorize fair-trade prices to be established by persons other than the owner of the trademark or trade name. This contention raises a hypothetical issue: Lilly is the owner of all trademarks affixed to its goods and the Ohio Supreme Court has not interpreted the statute as applying to persons other than owners. Hudson further argues that § 1333.29 (A) of the Ohio Act authorizes a proprietor to establish minimum resale prices for wholesale distributors with whom it competes and therefore conflicts with the McGuire Act under this Court's decision in United States v. McKesson & Robbins, Inc., 351 U. S. 305. This argument also raises a hypothetical question for, as noted, Lilly sells only to wholesalers and does not sell to retailers.[10]
The questions raised by Hudson in its second amended answer to the cross-petition,[11] including the contention *395 that Paragraph 6 of the Lilly fair-trade contracts compels retailers to enter into allegedly unlawful horizontal price-fixing agreements in violation of § 1 of the Sherman Act, are not properly before us. They are pending and unresolved in the Ohio Court of Common Pleas, Cuyahoga County. Hudson's remaining questions are not properly presented for resolution on this appeal; they concern issues involving alleged interpretations of the Ohio Act not made or considered by the Ohio courts or not raised by the facts of the case. Asbury Hospital v. Cass County, 326 U. S. 207, 213-214; Alabama State Federation of Labor v. McAdory, 325 U. S. 450, 470-471.
The price fixing authorized by the Ohio Fair Trade Act and involving goods moving in interstate commerce would be, absent approval by Congress, clearly illegal under the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 et seq. Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373. "Fixing minimum prices, like other types of price fixing, is illegal per se." Schwegmann Bros. v. Calvert Distillers Corp., supra, at 386. Congress, however, in the McGuire Act has approved state statutes sanctioning resale price maintenance schemes such as those involved here. Whether it is good policy to permit such laws is a matter for Congress to decide. Where the statutory language and the legislative history clearly indicate the purpose of Congress that purpose must be upheld. We therefore affirm the judgments of the Supreme Court of Ohio.
Affirmed.
MR. JUSTICE HARLAN, dissenting.
I would dismiss these appeals for lack of jurisdiction. Under well-established principles, the judgments on review here are not "final," as required by 28 U. S. C. *396 § 1257,[1] even assuming that the federal question which the Court decides can be deemed to have been passed on by the Supreme Court of Ohio.[2]
The appellant, Hudson, filed its petitions for a declaratory judgment that the Ohio Fair Trade Act[3] was invalid as soon as the Act went into effect.[4] The appellees, Upjohn and Lilly, filed answers and cross-petitions alleging Hudson's refusal to comply with the Act and seeking injunctive relief and damages. Pursuant to a stipulation of the parties and as permitted by Ohio procedure, the issue raised by the petition for a declaratory judgment the "general" validity of the Ohio Actwas tried separately and in advance of the trial of all other factual and legal issues raised by the answers and cross-petitions and the responses thereto. In this posture, the cases, decided together at every level, proceeded through the Ohio courts. The Court of Common Pleas for Cuyahoga County decided that the Ohio Fair Trade Act was invalid under the Ohio Constitution, because it involved an unlawful delegation of legislative power. On appeal, the Court of Appeals for Cuyahoga County reversed, 117 Ohio App. 207, 176 N. E. 2d 236, and remanded the case *397 to the Court of Common Pleas "for further proceedings according to law with respect to the cross-petition filed in this cause . . . ." The Supreme Court of Ohio affirmed. 174 Ohio St. 487, 190 N. E. 2d 460.
Although the distinction between final and nonfinal judgments, for purposes of this Court's jurisdiction, has been "faint and faltering at times," Republic Natural Gas Co. v. Oklahoma, 334 U. S. 62, 69, it has not disappeared altogether. The nature of the distinction and the reasons for maintaining it have repeatedly been stated. To be reviewed in this Court, a state court judgment must be "final as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein. It must be the final word of a final court." Market Street R. Co. v. Railroad Comm'n, 324 U. S. 548, 551. It "must end the litigation by fully determining the rights of the parties . . . ." Gospel Army v. Los Angeles, 331 U. S. 543, 546. See also, e. g., Mower v. Fletcher, 114 U. S. 127, 128; Cobbledick v. United States, 309 U. S. 323, 324-325; Department of Banking v. Pink, 317 U. S. 264, 267-268; Pope v. Atlantic Coast Line R. Co., 345 U. S. 379, 381-382.
"Since its establishment, it has been marked characteristic of the federal judicial system not to permit an appeal until a litigation has been concluded in the court of first instance . . . . This requirement has the support of considerations generally applicable to good judicial administration. It avoids the mischief of economic waste and of delayed justice. Only in very few situations, where intermediate rulings may carry serious public consequences, has there been a departure from this requirement of finality for federal appellate jurisdiction. This prerequisite to review derives added force when the jurisdiction of this Court is invoked to upset the decision of a State court. Here we are in the realm of potential conflict *398 between the courts of two different governments. . . . This requirement is not one of those technicalities to be easily scorned. It is an important factor in the smooth working of our federal system." Radio Station WOW, Inc., v. Johnson, 326 U. S. 120, 123-124.
One would have thought that the judgments reviewed here were paradigms of the nonfinal judgment. Assuming that the federal question which the Court decides was really passed on by the Ohio Supreme Court,[5] it is *399 clear nonetheless that this litigation is still in its early stages. No rights have yet been established; no liabilities have been incurred. The Court acknowledges that federal questions, involving unresolved issues of fact and interpretations of the Ohio Act, must still be decided by the Ohio courts. In Upjohn, No. 489, a federal question concerning the possible application of our decision in United States v. McKesson & Robbins, Inc., 351 U. S. 305, "was reserved for future determination by the Ohio courts pursuant to a stipulation of the parties . . . ." Ante, p. 394, note 10. And in Lilly, No. 490, other questions, including at least one federal question, "are pending and unresolved in the Ohio Court of Common Pleas . . . ." Ante, p. 395. The Court can only hope that it will not prove to have wasted its time altogether in these "piecemeal proceedings," Pope v. Atlantic Coast Line R. Co., supra, at 381, because a subsequent decision of the Ohio courts renders the decision here "unnecessary and irrelevant to a complete disposition of the litigation." Id., at 382 (footnote omitted). If that does not happen, there is every likelihood that the cases will be brought back to this Court for a second time, for consideration of the questions now unresolved. In Radio Station WOW, supra, at 127, this Court stated: "Of course, where the remaining litigation may raise other federal questions *400 that may later come here, . . . to allow review of an intermediate adjudication would offend the decisive objection to fragmentary reviews." The Court ignores that "decisive objection."
In addition to making an uneconomic use of its own time, the Court's entertainment of these appeals has interfered with the orderly procedures of the Ohio courts. In its brief to this Court, Lilly states that proceedings in the Court of Common Pleas have been stayed "pending the outcome of this appeal." Brief, p. 11. Upjohn states in its brief that it has not yet taken action to bring to trial the issues reserved in its case, Brief, p. 13, presumably because of the pendency of the present proceedings. So far as the litigants are concerned, this march to the well for an eye-dropper of water does them no good either, except insofar as delay may be temporarily useful to one party or the other. Now that this Court's decision is rendered, the action will presumably go forward in the state courts; the litigants are no better informed of their ultimate rights than they were before the case came here, and the case is not a jot closer to its conclusion.
The Court gives no explanation at all for its departure from established principles. There is not the faintest suggestion of compelling public considerations requiring a determination of whatever issue it is that the Court does actually decide.[6] Nor are there any private interests at *401 stake which will be irremediably lost unless the Court acts, since no rights or liabilities were determined below or have been determined here. The fact that under Ohio procedure Hudson's petition for a declaratory judgment was separable from the cross-petition and could be determined independently of its has no bearing on whether that determination was final for purposes of this Court's jurisdiction.[7]E. g., Department of Banking v. Pink, supra, at 268; Market Street R. Co. v. Railroad Comm'n, supra, at 551.
Ninety percent of this case remains submerged. I suspect that the explanation for the Court's snipping off and deciding the 10% that has reached the surface lies in the fact that the Court failed to dismiss the appeal when it was first presented, 375 U. S. 938, 939, because the jurisdictional objections to review were not then so apparent.[8] I am at a loss to understand why the Court chooses to compound the original error, rather than to correct it.
I would dismiss both appeals.
NOTES
[*] Together with No. 489, Hudson Distributors, Inc., v. Upjohn Company, also on appeal from the same court, argued April 29, 1964.
[1] The Supreme Court of Ohio stated: "The facts in both cases are similar and the law applicable is the same. The appeals will be treated together, since the assignments of errors in both cases are exactly the same." 174 Ohio St. 487, 190 N. E. 2d 460.
[2] Hudson, in its second amended answer to the cross-petition, allegedly raised the following defenses:

"(1) Hudson did not willfully resell at less than Lilly's fair trade prices;
"(2) Lilly, a foreign corporation, was not properly licensed to transact business in the State of Ohio;
"(3) paragraph 6 of Lilly's fair trade contract [which provides that: "Retailer agrees not to knowingly sell any of Manufacturer's `Identified Commodities' to any dealer who fails to observe the minimum retail resale prices established under Paragraph 3 hereof"] compelled retailers to enter into unlawful horizontal price fixing agreements in violation of Section 1 of the Sherman Anti-Trust Act . . . ;
"(4) Lilly was not uniformly enforcing its fair trade program on trade-marked commodities in Ohio; and
"(5) Lilly modified its fair trade program by abandoning enforcement on its prescription products in Ohio."
The issues on the cross-petition are pending in the Court of Common Pleas, Cuyahoga County; further proceedings have been stayed by that court pending the outcome of this appeal.
[3] The decision was affirmed by a 3-to-4 vote. The Ohio Constitution, Art. IV, § 2, provides: "No law shall be held unconstitutional and void by the supreme court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the court of appeals declaring a law unconstitutional and void."
[4] The fact that separate and unresolved issues are pending in the Ohio courts and subject to "further proceedings" therein on the cross-petition does not render the judgment of the Ohio Supreme Court on the issue here considered and decided nonfinal or unappealable within the meaning of 28 U. S. C. § 1257. Cf. Local No. 438 Construction & General Laborers' Union, AFL-CIO, v. Curry, 371 U. S. 542, 548-552; Mercantile Nat. Bank v. Langdeau, 371 U. S. 555, 557-558.
[5] The McGuire Act amended § 5 (a) of the Federal Trade Commission Act, as amended. Section 5 (a) (2) of the latter statute as thus amended, 15 U. S. C. § 45 (a) (2), is referred to herein simply as Section 2 of the McGuire Act, and § 5 (a) (3), 15 U. S. C. § 45 (a) (3), is referred to as Section 3 of the McGuire Act.
[6] The purpose of the McGuire Act is stated in its preamble: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it is the purpose of this Act to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws, and to adopt policies, which authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. It is the further purpose of this Act to permit such statutes, laws, and public policies to apply to commodities, contracts, agreements, and activities in or affecting interstate or foreign commerce." 66 Stat. 631-632.
[7] See United States v. McKesson & Robbins, Inc., 351 U. S. 305, 311, n. 14: "The McGuire Act . . . specifically exempts from the antitrust laws price fixing under `fair trade' agreements which bind not only retailers who are parties to the agreement but also retailers who refuse to sign the agreement."
[8] See Note, 77 Harv. L. Rev. 763, 766-767 (1964).
[9] The Court of Appeals for Cuyahoga County expressly noted that: "These [manufacturers] have entered into many written contracts with retail pharmaceutical establishments in Ohio, determining the retail resale price for their trademarked or branded commodities and have caused notice of these contracts and the prices therein established to be served on [Hudson]." 117 Ohio App. 207, 208; 176 N. E. 2d 236, 237.
[10] Hudson contends that the Upjohn case is distinguishable in this regard for Upjohn allegedly does not sell only to retailers. It is clear, however, that this contention was reserved for future determination by the Ohio courts pursuant to a stipulation of the parties and was not in any event passed upon in the decision from which the present appeal is taken.
[11] See note 2, supra.
[1] "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

.....
"(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."
[2] See note 5, infra, p. 398.
[3] Ohio Rev. Code §§ 1333.27-1333.34.
[4] The Act became effective on October 22, 1959. In the Upjohn case, No. 489, Hudson filed its original petition in August 1959, after the Act had been passed by the Ohio Legislature, and filed several amended petitions after the Act became effective. The original petition in Lilly, No. 490, was filed on October 22, 1959; it also was later amended.
[5] The Court of Common Pleas did not reach any federal question, since it found the Ohio Act invalid under the State Constitution. On appeal, the Court of Appeals described the cases as follows:

"The actions seek a declaratory judgment declaring the Ohio Fair Trade Act invalid and unconstitutional. Both cases involve similar facts and, with the questions to be determined by this court the same in each case, the appeals will be considered together. The assignment of error is identical in both cases.
" `For its assignment of error, the defendant-appellant asserts that the Court of Common Pleas of Cuyahoga County erred in declaring Sections 1333.27 through 1333.34 of the Ohio Revised Code to be in violation of the Constitution of the state of Ohio, and therefore void and not binding upon the plaintiff-appellee, and in granting judgment for the plaintiff-appellee on its petition and dismissing the cross-petition of the defendant-appellant.' " 117 Ohio App. 207-208, 176 N. E. 2d, 237.
There followed a long discussion of the "historical background," id., at 208, 176 N. E. 2d, 238, of the Ohio Act, which included consideration of major federal legislation and cases. It is entirely clear from the opinion that federal law was considered only as part of the demonstration "that not only the great majority of state legislatures but also the Congress of the United States have determined that there is need to provide reasonable controls in this field [of fair trade], under the police powers of the sovereign power." Id., at 224, 176 N. E. 2d, 247. There is nothing to indicate that the court considered anything beyond the single contention that the Court of Common Pleas had erred in holding the Act invalid under the State Constitution. A dissenting opinion states: "On this appeal, the single question presented is whether the 1959 Fair Trade Act . . . has the effect of nullifying the decision of the Supreme Court [of Ohio] in Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 167 Ohio St., 182." Id., at 230, 176 N. E. 2d, 251. The Union Carbide case was concerned solely with the validity of a prior Fair Trade Act under the Ohio Constitution. In a petition for rehearing (which was denied) the appellant itself urged that the court appeared to have ignored the question whether the Ohio Act was consistent with federal law, in particular the McGuire Act. Only the formal judgment, from which the Court quotes, ante, p. 388, contain any intimation that the Court of Appeals considered any federal question.
On review in the Supreme Court of Ohio, neither the majority opinion nor the dissenting opinion even once mentions the McGuire Act or this Court's cases construing it. 174 Ohio St. 487, 497, 190 N. E. 2d 460, 466.
[6] Indeed, so far as I can tell, the Court decides nothing at all which is not already established law. In United States v. McKesson & Robbins, Inc., 351 U. S. 305, 311, note 14, this Court stated:

". . . [The McGuire Act] specifically exempts from the antitrust laws price fixing under `fair trade' agreements which bind not only retailers who are parties to the agreement but also retailers who refuse to sign the agreement."
As I read the Court's opinion in this case, its sole holding is that "where sanctioned by a state fair-trade act, a trademark owner such as Lilly could be permitted to enforce, even against a nonsigning retailer such as Hudson, the stipulated minimum prices established by written contracts with other retailers." Ante, p. 392. This is nothing more than a restatement of the passage quoted from McKesson & Robbins, with the names of the parties in this case filled in. No special questions which might be raised by the facts of this case or by particular features of the Ohio Act are decided here, since the Court properly leaves all such questions for the initial decision of the Ohio courts.
The triviality, given the established law, of the question which the Court decides makes its determination to reach the question the more puzzling.
[7] The fact that Hudson's original petition was for a declaratory judgment has no bearing on the jurisdictional question present here. Such fact does not defeat this Court's jurisdiction, Nashville, Chattanooga & St. Louis R. Co. v. Wallace, 288 U. S. 249; but it surely does not create jurisdiction which would otherwise be lacking.
[8] The jurisdictional question was not called to the attention of the Court by either of the appellees at the time probable jurisdiction was noted. Upjohn filed no response to the jurisdictional statement; Lilly, then represented by other counsel, filed a motion to dismiss, but did not mention the jurisdictional question.