Mr. Justice Harlan,
dissenting.
I would dismiss these appeals for lack of jurisdiction. Under well-established principles, the judgments on review here are not “final,” as required by 28 U. S. C. *528 § 1257,[1] even assuming that the federal question which the Court decides can be deemed to have been passed on by the Supreme Court of Ohio.[2]
The appellant, Hudson, filed its petitions for a declaratory judgment that the Ohio Fair Trade Act[3] was invalid as soon as the Act went into effect.[4] The appellees, Upjohn and Lilly, filed answers and cross-petitions alleging Hudson’s refusal to comply with the Act and seeking injunctive relief and damages. Pursuant to a stipulation of the parties and as permitted by Ohio procedure, the issue raised by the petition for a declaratory judgment — the “general” validity of the Ohio Act — was tried separately and in advance of the trial of all other factual and legal issues raised by the answers and cross-petitions and the responses thereto. In this posture, the cases, decided together at every level, proceeded through the Ohio courts. The Court of Common Pleas for Cuyahoga County decided that the Ohio Fair Trade Act was invalid under the Ohio Constitution, because it involved an unlawful delegation of legislative power. On appeal, the Court of Appeals for Cuyahoga County reversed, 117 Ohio App. 207, 176 N. E. 2d 236, and remanded the case *529 to the Court of Common Pleas “for further proceedings according to law with respect to the cross-petition filed in this cause . .. The Supreme Court of Ohio affirmed. 174 Ohio St. 487, 190 N. E. 2d 460.
Although the distinction between final and nonfinal judgments, for purposes of this Court’s jurisdiction, has been “faint and faltering at times,” Republic Natural Gas Co. v. Oklahoma, 334 U. S. 62, 69, it has not disappeared altogether. The nature of the distinction and the reasons for maintaining it have repeatedly been stated. To be reviewed in this Court, a state court judgment must be “final as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein. It must be the final word of a final court.” Market Street R. Co. v. Railroad Comm’n, 324 U. S. 548, 551. It “must end the litigation by fully determining the rights of the parties . . . .” Gospel Army v. Los Angeles, 331 U. S. 543, 546. See also, e. g., Mower v. Fletcher, 114 U. S. 127, 128; Cobbledick v. United States, 309 U. S. 323, 324—325; Department of Banking v. Pink, 317 U. S. 264, 267-268; Pope v. Atlantic Coast Line R. Co., 345 U. S. 379, 381-382.
“Since its establishment, it has been a marked characteristic of the federal judicial system not to permit an appeal until a litigation has been concluded in the court of first instance .... This requirement has the support of considerations generally applicable to good judicial administration. It avoids the mischief of economic waste and of delayed justice. Only in very few situations, where intermediate rulings may carry serious public consequences, has there been a departure from this requirement of finality for federal appellate jurisdiction. This prerequisite to review derives added force when the jurisdiction of this Court is invoked to upset the decision of a State court. Here we are in the realm of potential con *530 flict between the courts of two different governments. . . . This requirement is not one of those technicalities to be easily scorned. It is an important factor in the smooth working of our federal system.” Radio Station WOW, Inc., v. Johnson, 326 U. S. 120, 123-124.
One would have thought that the judgments reviewed here were paradigms of the nonfinal judgment. Assuming that the federal question which the Court decides was really passed on by the Ohio Supreme Court,[5] it is *531 clear nonetheless that this litigation is still in its early stages. No rights have yet been established; no liabilities have been incurred. The Court acknowledges that federal questions, involving unresolved issues of fact and interpretations of the Ohio Act, must still be decided by the Ohio courts. In Upjohn, No. 489, a federal question concerning the possible application of our decision in United States v. McKesson & Robbins, Inc., 351 U. S. 305, “was reserved for future determination by the Ohio courts pursuant to a stipulation of the parties . . . Ante, p. 394, note 10. And in Lilly, No. 490, other questions, including at least one federal question, “are pending and unresolved in the Ohio Court of Common Pleas . . . Ante, p. 395. The Court can only hope that it will not prove to have wasted its time altogether in these “piecemeal proceedings,” Pope v. Atlantic Coast Line R. Co., supra, at 381, because a subsequent decision of the Ohio courts renders the decision here “unnecessary and irrelevant to a complete disposition of the litigation.” Id., at. 382 (footnote omitted). If that does not happen, there is every likelihood that the cases will be brought back to this Court for a second time, for consideration of the questions now unresolved. In Radio Station WOW, supra, at 127, this Court stated: “Of course, where the remaining litigation may raise other federal questions *532 that may later come here, ... to allow review of an intermediate adjudication would offend the decisive objection to fragmentary reviews.” The Court ignores that “decisive objection.”
In addition to making an uneconomic use of its own time, the Court’s entertainment of these appeals has interfered with the orderly procedures of the Ohio courts. In its brief to this Court, Lilly states that proceedings in the Court of Common Pleas have been stayed “pending the outcome of this appeal.” Brief, p. 11. Upjohn states in its brief that it has not yet taken action to bring to trial the issues reserved in its case, Brief, p. 13, presumably because of the pendency of the present proceedings. So far as the litigants are concerned, this march to the well for an eye-dropper of water does them no good either, except insofar as delay may be temporarily useful to one party or the other. Now that this Court’s decision is rendered, the action will presumably go forward in the state courts; the litigants are no better informed of their ultimate rights than they were before the case came here, and the case is not a jot closer to its conclusion.
The Court gives no explanation at all for its departure from established principles. There is not the faintest suggestion of compelling public considerations requiring a determination of whatever issue it is that the Court does actually decide.[6] Nor are there any private interests at *533 stake which will be irremediably lost unless the Court acts, since no rights or liabilities were determined below or have been determined here. The fact that under Ohio procedure Hudson’s petition for a declaratory judgment was' separable from the cross-petition and could be determined independently of it has no bearing on whether that determination was final for purposes of this Court’s jurisdiction.[7] E. g., Department of Banking v. Pink, supra, at 268; Market Street R. Co. v. Railroad Comm’n, supra, at 551.
Ninety percent* of this case remains submerged. I suspect that the explanation for the Court’s snipping off and deciding the 10% that has reached the surface lies in the fact that the Court failed to dismiss the appeal when it was first presented, 375 U. S. 938, 939, because the jurisdictional objections to review were not then so apparent.[8] I am at a loss to understand why the Court chooses to compound the original error, rather than to correct it.
I would dismiss both appeals.

 “Pinal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:
“(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.”

 See note 5, infra, p. 398.

 Ohio Rev. Code §§ 1333.27-1333.34.

 The Act became effective on October 22, 1959. In the Upjohn case, No. 489, Hudson filed its original petition in August 1959, after the Act had been passed by the Ohio Legislature, and filed several amended petitions after the Act became effective. The original petition in Lilly, No. 490, was filed on October 22, 1959; it also was later amended.

 The Court of Common Pleas did not reach any federal question, since it found the Ohio Act invalid under the State Constitution. On appeal, the Court of Appeals described the eases as follows:
“The actions seek a declaratory judgment declaring the Ohio Fair Trade Act invalid and unconstitutional. Both cases involve similar facts and, with the questions to be determined by this court the same in each case, the appeals will be considered together. The assignment of error is identical in both cases.
“ 'For its assignment of error, the defendant-appellant asserts that the Court of Common Pleas of Cuyahoga County erred in declaring Sections 1333.27 through 1333.34 of the Ohio Revised Code to be in violation of the Constitution of the state of Ohio, and therefore void and not binding upon the plaintiff-appellee, and in granting judgment for the plaintiff-appellee on its petition and dismissing the cross-petition of the defendant-appellant.’ ” 117 Ohio App. 207-208, 176 N. E. 2d, 237.
There followed a long discussion of the “historical background,” id., at 208, 176 N. E. 2d, 238, of the Ohio Act, which included consideration of major federal legislation and cases. It is entirely clear from the opinion that federal law was considered only as part of the demonstration “that not only the great majority of state legislatures but also the Congress of the United States have determined that there is need to provide reasonable controls in this field [of fair trade], under the police powers of the sovereign power.” Id., at 224, 176 N. E. 2d, 247. There is nothing to indicate that the court considered anything beyond the single contention that the Court of Common Pleas had erred in holding the Act invalid under the State Constitution. A dissenting opinion states: “On this appeal, the single question presented is whether the 1969 Fair Trade Act . . . has the effect of nullifying the decision of the Supreme Court [of Ohio] *531 in Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 167 Ohio St., 182.” Id., at 230, 176 N. E. 2d, 251. The Union Carbide case was concerned solely with the validity of a prior Fair Trade Act under the Ohio Constitution. In a petition for rehearing (which was denied) the appellant itself urged that the court appeared to have ignored the question whether the Ohio Act was consistent with federal law, in particular the McGuire Act. Only the formal judgment, from which the Court quotes, ante, p. 388, contains any intimation that the Court of Appeals considered any federal question.
On review in the Supreme Court of Ohio, neither the majority opinion nor the dissenting opinion even once mentions the McGuire Act or this Court’s cases construing it. 174 Ohio St. 487, 497, 190 N. E. 2d 460, 466.

 Indeed, so far as I can tell, the Court decides nothing at all which is not already established law. In United States v. McKesson & Robbins, Inc., 351 U. S. 305, 311, note 14, this Court stated:
“. . . [The McGuire Act] specifically exempts from the antitrust laws price fixing under ‘fair trade’ agreements which bind not only retailers who are parties to the agreement but also retailers who refuse to sign the agreement.”
As I read the Court’s opinion in this case, its sole holding is that “where sanctioned by a state fair-trade act, a trademark owner such as Lilly could be permitted to enforce, even against a nonsigning retailer such as Hudson, the stipulated minimum prices established by *533 written contracts with other retailers.” Ante, p. 392. This is nothing, more than a restatement of the passage quoted from McKes-son & Robbins, with the names of the parties in this case filled in. No special questions which might be raised by the facts of this case or by particular features of the Ohio Act are decided here, since the Court properly leaves all such questions for the initial decision of the Ohio courts.
The triviality, given the established law, of the question which the Court decides makes its determination to reach the question the more puzzling.

 The fact that Hudson’s original petition was for a declaratory judgment has no bearing on the jurisdictional question present here. Such, fact does not defeat this Court’s jurisdiction, Nashville, Chattanooga & St. Louis R. Co. v. Wallace, 288 U. S. 249; but it surely does not create jurisdiction which would otherwise be lacking.

 The jurisdictional question was not called to the attention of the Court by either of the appellees at the time probable jurisdiction was noted. Upjohn filed no response to the jurisdictional statement; Lilly, then represented by other counsel, filed a motion to dismiss, but did not mention the jurisdictional question.