**RALSTON PURINA COMPANY,**
Appellant,

v.

**PARSONS FEED & FARM SUPPLY, INC., Thurman Parsons, Inez Parsons, Glenn Parsons, and Alma Parsons, Appellees (two cases).**

**Nos. 19336, 19428.**

United States Court of Appeals
Eighth Circuit.

Aug. 27, 1969.

---

1. Defendant's counsel.

F. W. Schwarz, St. Louis, Mo., for appellant, J. A. Fraser, St. Louis, Mo., and James R. Hale, Fayetteville, Ark., on the brief.

W. B. Putman, Fayetteville, Ark., for appellees.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

We are concerned here with the elusive question of the proper interest to be allowed on an unliquidated counterclaim reduced to judgment, then reversed, and then reduced to an identical judgment at a date subsequent to the entry of judgment on the plaintiff's liquidated claim. The parties are agreed that, to the extent state law is pertinent, Arkansas law applies.

The facts are not in dispute:

1. In February 1964 Ralston Purina Company instituted a diversity action against Parsons Feed & Farm Supply, Inc., and four individual guarantors to recover $116,471.60, part of which ($16,-027.46) was an open account for goods sold and delivered in 1963, and the remainder of which ($100,444.14) was for turkeys sold under a 1963 contract. Parsons and the individual defendants counterclaimed for $80,725.14 made up of damages ($64,429.47) for breach of a 1960 contract to purchase chicks and hatching eggs, and a discount ($16,295.-67) under a 1962 agreement for the purchase of bulk feed from Ralston.

2. On October 16, 1964, at pretrial, it was determined that Ralston's accounting against Parsons was correct. The district court entered an order reciting that it finds that Parsons was indebted to Ralston for the claimed amount of $116,-471.60. The issues raised by the counterclaim were not then resolved and were set for trial to a jury. No formal judgment was entered on that date.

3. At the ensuing trial the jury returned a verdict in favor of Parsons on the issue involving chicks and eggs but in favor of Ralston on the bulk sales discount issue. It fixed Parsons' damages at the $64,429.47 amount claimed.

4. Accordingly, on November 19, 1964, the district court entered judgment for Ralston for $116,471.60 on its claim and for the defendants for $64,429.47 on the counterclaim, set off the latter against the former, and entered a net judgment for Ralston for $52,042.13 against Parsons and the guarantors. The judgment made no reference to interest.

5. Ralston appealed from that part of the judgment which granted the setoff. This court reversed on evidentiary and instructional grounds, with costs to Ralston, and remanded the case for a new trial. Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc., 364 F.2d 57 (8 Cir. 1966).

6. The case was retried. The jury again returned a verdict for Parsons for

$64,427.47.[1] Judgment was entered accordingly on February 7, 1967, and, as amended three days later, set off the $64,427.47 against Ralston's judgment of November 19, 1964, for $116,471.60, making a net judgment for Ralston for $52,044.13 plus the costs allowed on the appeal. Here, too, there was no mention of interest.

7. Ralston again appealed. In November 1967 this court, on its own motion, dismissed that appeal for Ralston's failure to prosecute. Ralston thereby accepted the result as to the principal amount of the counterclaim.

8. On December 19, 1967, Ralston caused an execution to issue in its favor for $116,471.60 with interest thereon at 6 per cent per annum from October 16, 1964, plus the appellate costs, but less the amount of $64,427.47 and interest thereon at 6 per cent per annum from February 7, 1967. The effect of this would have been to allow Ralston interest on the full amount of its claim from the date of the pretrial determination to the date of the second judgment, and on the amount of the net judgment from and after the date of the second judgment.

9. The defendants moved to stay the execution. They admitted the net principal indebtedness to Ralston but, as grounds for the stay, they alleged a valid tender, Ralston's refusal of that tender, and delays on the part of Ralston which made it unconscionable for interest to be allowed during the period of those delays. Ralston, in its turn, moved for summary judgment.

10. Judge Miller on April 8, 1968, sustained the defendants' motion to stay the execution and denied Ralston's motion for summary judgment. In this memorandum order he stated:

"From the date of the filing of the complaint the plaintiff has obstinately contended that the defendants owed it the sum of $116,471.60, and has re-

fused to recognize its own obligation to the defendants. The defendants have consistently admitted that they owed the plaintiff the sum of $116,471.60, but that the plaintiff owed them at least the sum of $64,427.47. The plaintiff would not recognize the claim of defendants for any sum, with the result that there were two jury trials and in both cases the jury returned a verdict for the defendants on their counterclaim * * *.

\* \* \* \* \* \*

"The defendants alleged in their motion attacking the execution that they had tendered to plaintiff the amount of $52,040.13 with interest at 6 percent. The record does not establish that a legal tender was made but if such a tender had been made in settlement of the claim of plaintiff, the court is of the opinion that it would not have been accepted. Everyone connected with the lawsuit recognized that whatever amount of judgment the plaintiff recovered, the defendants were fully able financially to pay it. The entire attitude of plaintiff was that the counterclaim was without substance. This attitude arose because of the belief on the part of plaintiff that no contracts were entered into by its duly authorized agent which required the payment to the defendants of any sum. The testimony in both trials showed that such contention on the part of the plaintiff was arbitrary. The mere fact that the judgment rendered in the first trial was reversed by the Court of Appeals did not in anywise weaken or alter the counterclaim of defendants. This is substantiated by the result of the second trial. * * *

"After reviewing the entire record, the court is of the opinion that it would be unjust to allow plaintiff the interest as claimed by it. This is a case that requires the court to exercise its judicial discretion in reaching a decision."

---

1. Upon inquiry at oral argument counsel could not explain why this amount was $2 less than the amount stated in the

counterclaim and determined by the first jury.

The court then granted Ralston an alias execution to recover interest at 6 per cent per annum on $116,471.60 from October 16, 1964, to November 19, 1964, and the sum of $52,040.13 [2] with interest thereon at 6 per cent per annum from November 19, 1964. The effect of this was to disallow Ralston interest on its full claim during the period between the first and second judgments or, to put it oppositely, to allow Parsons counterbalancing interest on the amount of its counterclaim from the date of the first rather than the second judgment.

11. Ralston has again appealed. This is our No. 19,336.

12. On August 7, 1968, in response to this court's limited interim remand, Judge Miller entered an order permitting Parsons to deposit in the district court's registry a sum sufficient to cover the Ralston judgment principal and interest to the extent allowed by the order of April 8, 1968, as amended. From this order Ralston has taken a protective appeal. This is our No. 19,428.

The contested interest, therefore, is on the amount of the defendants' eventually allowed counterclaim for the period between the date of the first judgment and the date of the second judgment. This is 6 per cent per annum on $64,427.47 for something over 26 months.

Ralston's position is that counterbalancing interest on Parsons' counterclaim cannot begin to run until the entry of the second judgment on February 7, 1967. It argues that, by the reversal on the first appeal, the judgment of November 19, 1964, was rendered null and void and no longer existed; that the reversal left the parties in the positions they occupied before the judgment was entered; that the counterclaim was established only on February 7, 1967; and that it, Ralston, is entitled not to lose interest on its claim for the period between October 16, 1964, and February 7, 1967.

The defendants argue that Ralston is urging the "interest on the entire claim" approach which is "the extreme minority view"; that this was properly rejected by the district court; that an award of interest is to compensate a party for his being deprived of the rightful use of his money; that it would be inequitable to allow Ralston interest on its claim when it was not entitled to receive that entire amount; that, after four years and two trials, the validity of the setoff has been finally established; that Ralston was denied the use of only the net amount; that there is no authoritative Arkansas decision; and that this is a clear case for the exercise of the trial court's discretion.

As Judge Miller pointed out in his memorandum, a judgment creditor, under Arkansas law, with stated exceptions not applicable here, is entitled to receive interest at 6 per cent per annum (unless a contract is involved which specifies a greater rate) "from the day of signing judgment" and until "satisfaction". Ark.Stat.Ann. §§ 29–124 and 125 (Repl. 1962). Title 28 U.S.C. § 1961 provides that interest shall be allowed on any money judgment recovered in a United States district court in a civil case and "shall be calculated from the date of the entry of the judgment, at the rate allowed by State law."

These statutory provisions are not particularly helpful to us here, especially in the absence of authoritative construction of the Arkansas statutes by the Supreme Court of that State. Clearly, however, the Arkansas and federal statutes together generally authorize postjudgment interest at 6 per cent per annum.

At this point it is perhaps well precisely to pinpoint the nature of the interest which is at issue. On the Ralston side we are concerned essentially with postjudgment interest and not with prejudgment interest. The defendants concede that

---

2. Here the $2 differential goes the other way. The correct amount appears to be $52,044.13 and was so recognized by the district court in its subsequent order dated August 7, 1968.

Ralston is entitled to postjudgment interest on its claim for $116,471.60 and, furthermore, have raised no objection to the allowance of interest thereon from and after October 16, 1964. We note, however, in passing, that an argument could have been made to the effect that the proper date for the start of interest in Ralston's favor is not October 16 but is November 19, 1964, when the district court formally entered the judgment for the amount which had been determined one month and three days prior thereto at pretrial. See Rule 54(b), Fed.R.Civ.P.; Caputo v. U. S. Lines Co., 311 F.2d 413, 416–417 (2 Cir. 1963), cert. denied, Imparato Stevedoring Corp. v. United States Lines Co. 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055; 6 Moore's Federal Practice par. 54.42, at 272 (2d ed. 1966). Nevertheless, because the defendants make no point as to the allowance of interest to Ralston for that 34-day period, because they have taken no cross-appeal, and because in their brief they acknowledge Ralston's "pre-trial judgment" and "pre-trial order judgment" and the October "date of its entry", we must, for purposes of this appeal, regard the earlier date as the date of Ralston's judgment. This being so, Ralston's interest is entirely postjudgment.

On the Parsons side the situation is different. Ralston concedes that Parsons is entitled to interest on the amount of its allowed counterclaim from and after the second judgment entered on February 7, 1967. This is clearly postjudgment interest. Parsons claims that it is entitled, as well, to interest on the amount from the date of the first judgment on November 19, 1964, thereafter reversed. In a sense, interest from and after that date could be described as postjudgment interest, if one takes the position that the reversal of the first judgment was of no ultimate significance because of the subsequent entry of an identical second judgment. From Ralston's point of view, however, any interest on the Parsons counterclaim for the period from November 19, 1964, to February 7, 1967, is prejudgment interest, for it is only on the latter date that Parsons obtained its final judgment.

In Ralston's favor are those authorities which announce that, when a judgment is reversed and the matter remanded for a new trial, "the case stands as if no action at all had been taken by the trial court." Palmer v. Carden, 239 Ark. 336, 389 S.W. 2d 428, 430 (1965); Hartford Fire Ins. Co. v. Enoch, 79 Ark. 475, 96 S.W. 393, 394 (1906); Harrison v. Trader, 29 Ark. 85 (1874); 5B C.J.S. Appeal and Error § 1950, at 511 (1958); 50 C.J.S. Judgments § 625, at 51 (1947); Am.Jur.2d Appeal and Error § 955, at 382 (1962). See Gospel Army v. Los Angeles, 331 U.S. 543, 546, 67 S.Ct. 1428, 91 L.Ed. 1662 (1947); Kaplan v. Joseph, 125 F.2d 602, 606 (7 Cir. 1942). If this is so, any counterbalancing interest for the defendants is prejudgment interest.

Judge Van Pelt has had occasion to endeavor to analyze the problem of prejudgment interest in the face of a counterclaim. Socony Mobile Oil Co. v. Klapal, 205 F.Supp. 388, 390–393 (D.Neb. 1962). He was confronted with the situation, such as the one here, where a liquidated contract claim was opposed by an unliquidated counterclaim. He cites cases where the courts have struggled with the problem and he attempts to formulate the varying rules which have been applied. He recognizes four different approaches. The "interest on the balance" rule allows prejudgment interest only on the difference between the two claims from the date the unliquidated claim is due. The "conversion of liquidated claim" rule regards the difference as itself an unliquidated amount on which prejudgment interest is not recoverable. See 47 C.J.S. Interest § 19, at 31–32 (1946). The "interest on the entire claim" rule entitles the plaintiff to interest on the full amount of his claim when the counterclaim does not directly concern the plaintiff's claim, that is, when the unliquidated counterclaim arises out of a collateral matter. This rule thus is an exception to the "interest on the balance" rule. The fourth ap-

proach views the unliquidated "counter-claim as a discount" and entitles the plaintiff to interest on his full claim before judgment. Judge Van Pelt then had to select and apply one of these rules to the facts before him. He concluded that the counterclaim there did not relate to the undisputed portion of the primary claim; that it would not "seem logical" to apply the "conversion of liquidated claim" rule to the plaintiff's entire claim; that mutual debts do not extinguish each other by mere operation of law; that a creditor's right to interest on a liquidated amount should not be defeated by the assertion of an unliquidated counterclaim; and that the "interest on the entire claim" rule was there applicable. He arrived at this conclusion even though the undisputed portion of the plaintiff's claim was less than the amount determined to be owing from the plaintiff to the defendant on the unliquidated counterclaim.

Other cases where interest on the entire claim has been allowed are American Sur. Co. of New York v. United States for Use and Benefit of B & B Drilling Co., 368 F.2d 475, 479–480 (9 Cir. 1966); Fluor Corp. v. United States ex rel. Mosher Steel Co., 405 F.2d 823, 830 (9 Cir. 1969), cert. denied, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40; Hunt Foods, Inc. v. Phillips, 248 F.2d 23, 27–28 (9 Cir. 1957); Mall Tool Co. v. Far West Equip. Co., 45 Wash.2d 158, 273 P.2d 652, 664 (1954). Only interest on the balance was allowed in Hansen v. Covell, 218 Cal. 622, 24 P.2d 772, 775–776, 89 A.L.R. 670 (1933); Farrington v. Freeman, 251 Iowa 18, 99 N.W.2d 388, 392 (1959); Knutson v. Lasher, 219 Minn. 594, 18 N.W.2d 688, 696 (1945); Muller v. Barnes, 139 Cal.App.2d 847, 294 P.2d 505, 506–507 (1956); Matthew A. Welch & Sons v. Bird, 193 A.2d 736, 739 (D.C.Ct. App.1963). We have the impression that in some of these interest on the balance cases the emphasis has been on the question whether the plaintiff is entitled to any interest at all and not on the question whether interest to which he is entitled is to be reduced because of the counterclaim. Some of the cases, too, are colored by specific state statutory provisions.

In the present case the defendants' counterclaim was an unliquidated one and appears to be so conceded by the defendants in their brief. Further, the counterclaim is not directly related to Ralston's larger liquidated claim. Thus one may argue that the facts call for the application of the "interest on the entire claim" rule.

We are not content, however, on the aggregate of the facts before us, to apply that rule or to conclude that Judge Miller was in error in allowing Ralston interest only on the net amount from and after November 19, 1964.

Although interest was in disfavor in the early English law, it was eventually sanctioned by statute there in 1545. 37 Hen. 8, c. 9; II Blackstone Commentaries 454 and 463 n. 1; 47 C.J.S. Interest § 2 (1946). It then met with favor in the commercial world and came to be regarded as compensation allowed by law for the use or forbearance of money or as damages for its improper retention. 47 C.J.S. Interest § 1 (1946); 30 Am.Jur. Interest § 2 (1958). The damages eventually established by the Parsons counterclaim antedated October 16, 1964; thus during the entire contested interest period Ralston was obligated to Parsons in the amount ($64,427.47) of the counterclaim eventually allowed. Although Parsons owed Ralston the amount of Ralston's larger claim, Ralston also owed Parsons, during that period, the amount of the smaller counterclaim. Thus Ralston was deprived of the use of money only to the extent of the difference between the two claims. One, of course, may point out that the same situation also existed prior to November 19, 1964, and yet Parsons concedes that it is not entitled to counterbalancing interest before that date. There may be some illogic in this but one may opposingly point out that Ralston does not claim, and does not receive, interest for the period prior to October 16, 1964, even though its claim pre-existed that date.

These vagaries are occasioned by the necessity of fixing some date, albeit an arbitrary one, for the commencement of interest. All we note here, for what it is worth, is that throughout the contested period Ralston was obligated to Parsons and, up to the amount of the counterclaim, was not deprived of the use of money.

We note, too, that when vexing problems of interest, not specified by statute, have presented themselves to the United States Supreme Court, that tribunal over the years has approached and resolved these problems in a sense of equity or fairness.

"And the decisions of this court have often since exemplified the principle by considering the question of the responsibility for interest from the point of view of reason and justice, even though no express statute existed for compelling this payment." Billings v. United States, 232 U.S. 261, 286, 34 S. Ct. 421, 58 L.Ed. 596 (1914) (tax on use of foreign-built yachts).

"The cases teach that interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939) (taxes improperly levied on Indian lands).

See also United States v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 34 L.Ed. 112 (1890) (delay by the government in the assertion of its right to recover money mistakenly paid); Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 92 L.Ed. 3 (1947) (penalties under the Agricultural Adjustment Act of 1938 as amended); Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962) (recovery, on behalf of corporation, of director's short swing profits).

The discretionary approach as to interest is suggested by Restatement of Contracts § 337(b) (1932) and is apparent in Continental Oil Co. v. United States, 184 F.2d 802, 822–823 (9 Cir. 1950); Blankenship v. Rowntree, 238 F.2d 500, 504–505 (10 Cir. 1956); Fassbinder v. Pennsylvania R.R., 233 F.Supp. 574, 575 (W.D.Pa.1964); Oliver-Electrical Mfg. Co. v. I. O. Teigen Constr. Co., 183 F. Supp. 768, 769 (D.Minn.1960). See General Ins. Co. of America v. Hercules Constr. Co., 385 F.2d 13, 25 (8 Cir. 1967). And the Washington court in Mall Tool Co. v. Far West Equip. Co., supra, 273 P.2d at 664, allowed prejudgment interest only to a date on which the judgment "could have been entered".

In the light of all the facts here, namely, the multiplicity of business dealings between the parties over a period of years; the pendency of this litigation now for over five years; the fact that the litigation was primarily concerned with an agency question, rather than with a computational one; the identity of the result reached on the counterclaim at the two trials; the conceded financial integrity of the defendants; the existence of cross-obligations throughout the entire period of the contested interest; the rather arbitrary nature of commencement dates for the running of interest anyway; Ralston's apparent "dividend" of 34 days with the questionable starting date of October 16, 1964; the purpose of interest; fairness to the parties; and the precedent afforded by the United States Supreme Court cases, we are led to conclude that error in Judge Miller's ruling on interest has not been demonstrated by Ralston. We may paraphrase and quote Mr. Justice Black's concluding sentence in the opinion in Blau v. Lehman, supra, 368 U.S. at 414, 82 S.Ct. at 457, and observe that Judge Miller denied interest here for the full amount of the claim during the contested period and "we cannot say that the denial was either so unfair or so inequitable as to require us to upset it."

Affirmed.