Abraham BLUSTEIN, Appellant,

v.

EUGENE SOBEL COMPANY, Inc.,
Appellee.

No. 14333.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 8, 1958.

Decided Jan. 22, 1959.

Petition for Rehearing Denied
Feb. 24, 1959.

Mr. Bernard I. Nordlinger, Washington, D. C., with whom Messrs. David Huddle, Alan Y. Cole, Charles Kershenbaum and Miss Selma M. Levine, Washington, D. C., were on the brief, for appellant.

Mr. Albert E. Arent, Washington, D. C., with whom Messrs. Joseph D. Bulman, Washington, D. C., and Francis J. Robinson, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

On December 15, 1949, appellee Eugene Sobel Co., Inc., plaintiff in the District Court, contracted to purchase from appellant Abraham Blustein, defendant, the capital stock of the Blustein Company, a wholesale jewelry business located in the District of Columbia. The contract of sale included a warranty, set forth in the margin,[1] that the books of the Blustein Company properly reflected the liabilities of the company for income taxes. Plaintiff, in a series of twenty-six checks dated August 13, 1954, through September 14, 1956, paid the Director of Internal Revenue $21,685.07 in satisfaction of an assessment for an income tax deficiency of the Blustein Company for the year ended January 31, 1948. The payments consisted of $13,690.84 deficiency in the tax, $898.66 penalty, $5,713.22 as interest from the date the tax was due, April 15, 1948, to the date of assessment, July 30, 1954, and $1,382.35 as interest because of payment of the assessment of $20,302.72 in installments.

Prior to the payments plaintiff informed defendant of a proposed deficiency assessment and offered him the opportunity to defend. Defendant denied liability and would not join in defense of the claim. Plaintiff thereafter succeeded in obtaining from the Internal Revenue Service a reduction of the assessment to $20,302.72. Plaintiff then informed defendant of the assessment and demanded that he adjust the purchase price of the stock accordingly. Upon his refusal to do so plaintiff filed suit for damages for breach of warranty.

The case was tried to a jury, which returned a verdict for plaintiff upon which judgment was entered in the sum of $26,813.40 consisting of the following: $24,256.91 representing the amount paid in satisfaction of the $20,302.72 assessment, with interest on this amount from July 30, 1954, the date the assessment was levied, to the date of judgment, plus $2,556.49. The latter item was the agreed amount of counsel fees and disbursements paid by plaintiff in defense of the tax claim. Plaintiff did not seek and was not given judgment for the $1,382.35 in interest paid as a result of its inability to make full payment at the time the assessment was levied.

---

1. "[T]hat the books of account of the Blustein Co., Inc. include an accurate and complete record of all present liabilities of said corporation, absolute and contingent, for income taxes. In case of a breach of this warranty, ascertained subsequent to execution and delivery hereof, Seller agrees to adjust the purchase price accordingly, whether or not the price has theretofore been paid, but only after such liability shall become absolute. Seller, however, reserves the right to defend said corporation against such claims, if any, at his cost."

The basis for the deficiency assessment was that the closing merchandise inventory figure appearing on the tax return of Blustein Company for the year ended January 31, 1948, had been substantially understated. In the accounting cycle this understatement caused the figure for cost of goods sold to be overstated, with the consequence that gross profits were understated. This in turn was reflected finally in an understatement of the net income upon which the tax for 1948 was computed.

■ On appeal from the judgment defendant urges that it should not be required to pay damages for breach of warranty because plaintiff failed (1) to contest the proposed assessment in good faith and (2) to give defendant full and fair notice of and opportunity to defend against the claim. But abundant evidence supports the jury's resolution of these factual issues adversely to defendant. Tax counsel retained by plaintiff looked into the question of technical defenses, such as the statute of limitations. There is evidence this defense was suggested to the Internal Revenue Agent[2] in meetings between tax counsel and the agent, but that the latter pointed out that fraud might be a defense to the limitations question. Tax counsel testified that since there was the possibility the Government could allege fraud in preparation of the closing inventory figure on the tax return he deemed it advisable to settle the matter. The penalty for fraud in preparing a tax return would have been greatly in excess of the penalty actually assessed. In view of these facts it would not appear that plaintiff acted imprudently or in bad faith in deciding to accept the advice of his counsel and enter into the settlement. When the understated inventory evaluation was first discovered plaintiff notified defendant of its findings. At least two conferences were then held between plaintiff's accountant and defendant's tax counsel with respect to the matter. When the Internal Revenue Service notified plaintiff that it would inspect the books for the years ended January 31, 1948, and January 31, 1949, defendant was immediately advised and given an opportunity to defend any claim which might arise out of the investigation. Further, there is evidence that when notice of the proposed deficiency assessment was received by plaintiff it sent the notice together with the Internal Revenue Agent's report to defendant asking him to advise as to what he proposed to do in defense. At this time several letters passed between the parties in which defendant denied repeatedly any responsibility.

Defendant also urges that the court excluded evidence and argument to the effect that plaintiff fraudulently manipulated the closing merchandise inventory for the year ended January 31, 1948, to create a tax liability for that year so as to bring about income tax advantages to it in the future; further, that since plaintiff shifted its tax liability for the future back to 1948 it created the tax problem and suffered no damage. We must take it on the evidence, however, considered with the charge, that the jury found as facts that the closing merchandise inventory for the year ended January 31, 1948, was understated, and that an unpaid tax liability existed for that year in an amount included in the verdict. And with respect to a possible fraudulent manipulation by plaintiff of the closing inventory figure we find no competent evidence to have been excluded. Accordingly there was no improper restriction of argument due to exclusion of evidence. In short, so far as the evidence and rulings thereon are concerned, we find nothing of such significance as to impair the validity of the conclusions reached by the jury.

There now remain certain specific legal questions. The tax return of Blustein Company for the fiscal year ended January 31, 1948, was filed on or about April 15, 1948. More than three years thereafter, on December 22, 1952, and again on May 27, 1954, plaintiff filed Forms 872

---

2. Referred to in the transcript as Internal Revenue adviser.

with the Internal Revenue Service waiving the statute of limitations and consenting to the imposition of a deficiency assessment for the year ended January 31, 1948. These waivers expressly provided that they "shall be valid only if it is finally determined that the provisions of section 275(c) of the Internal Revenue Code are applicable to the year [1948]." This provision was inserted to comply with section 276(b) of the Internal Revenue Code which requires that waivers be executed before the expiration of the limitations period.[3] Whether the applicable statute of limitations had expired when these waivers were executed depends upon whether an understatement of the figure for the closing merchandise inventory constitutes an "omission" from gross income, which would make the five year statute applicable, or a "routine adjustment," thereby making applicable the three year statute.[4] Defendant contends there was no liability for a deficiency for 1948 because the understatement of the closing merchandise inventory figure on the tax return was a "routine adjustment" within the purview of the three year statute of limitations which had run before the deficiency assessment was asserted and the waivers executed. Since there was no liability, defendant argues, there could have been no valid deficiency assessed and, therefore, no breach of warranty.

■ Subsequent to the payments by plaintiff in satisfaction of the assessment the Supreme Court decided Colony, Inc. v. Commissioner, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119, which construed the words "omits from gross income an amount properly includible therein" in section 275(c) to refer to situations in which specific items of income are left out of the computation of gross income, and not to instances where the specific item appears in the computations of gross income but is overstated. Thus the Court held the five year statute of limitations inapplicable and, since the three year statute had run, would not allow the proposed assessment. We accordingly assume that the general three year limitations period prescribed by section 275(a) applied to the facts of this case. The necessary consequence, says the defendant, is that the waivers were ineffective because they were not executed before the applicable period of limitations had run, the assessment of the deficiency was invalid, and no tax was due. However, during the period when plaintiff was making payments in satisfaction of the assessment and at the times plaintiff signed the waivers, the question before the Court in the Colony case was unsettled. The Courts of Appeals were in conflict.[5] Yet defendant stood inactive, failing to defend the claim of the Internal Revenue Service on any ground, though

3. Section 276(b) of the Code of 1939 provides:

"Waiver. Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." 26 U.S.C.A. § 276(b).

4. The pertinent provisions of the 1939 Code are:
"§ 275. * * *
"Except as provided in section 276—
"(a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.
*　*　*　*　*
"(c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed." 26 U.S.C.A. § 275.

5. Colony, Inc. v. Commissioner, supra, 357 U.S. at page 31, 78 S.Ct. at page 1035.

fully advised of its import. Plaintiff in good faith, as established by the verdict of the jury under proper instructions made a settlement which in reason seemed to it to be wise and proper at the time. In these circumstances defendant may not now avoid liability on the ground that plaintiff might have avoided payment of any deficiency by raising the applicable limitations statute as a bar to the assessment. Defendant's warranty that the books of the Blustein Company included an accurate and complete record of all present liabilities of the corporation for income taxes, absolute and contingent, was breached. In case of such a breach the contract provided that defendant should adjust the purchase price of the stock accordingly, after the liability had become absolute. We construe the liability for the deficiency to have become absolute between the contracting parties when in good faith a settlement was made between the Internal Revenue Service and plaintiff. The warranty does not require us to find now that it was not breached by defendant because liability for the deficiency could have been avoided. Since the evidence disclosed a breach by defendant of his representations made in the warranty, his liability followed for such additional taxes, due to such breach, as were paid by plaintiff pursuant to a good faith compromise between it and the Internal Revenue Service, assuming defendant had due notice and opportunity to defend. The case might be different had defendant timely either suggested or asserted the limitations defense.

■■ The final contention we discuss is that the court erred in directing the jury to include interest on the amount of the assessment, $20,302.72, from July 30, 1954, the date the assessment was levied, to the date of judgment. The sum of $20,302.72, we have seen, was paid by plaintiff for deficiency taxes, penalty, and

interest from the date the tax was due, April 15, 1948, to the date of assessment, July 30, 1954. Defendant contends that under section 28–2708 D.C.Code (1951) the court could not direct the jury to award interest to the date of judgment because the statute permits such interest only when the jury determines that it is "necessary to fully compensate the plaintiff." But that provision is not applicable where the action is for recovery of a liquidated indebtedness. In such case section 28–2707 D.C.Code (1951) applies.[6] When the settlement was entered into and payment in accordance with it was made by plaintiff the indebtedness of defendant to plaintiff became a liquidated one. See Gasper v. Mayer, 1935, 171 Okl. 457, 43 P.2d 467; Kellogg v. Iowa State Traveling Men's Association, 1947, 239 Iowa 196, 29 N.W.2d 559. In Corbin on Contracts § 1046 (1951 ed.) the author states,

> "For the purpose of collecting interest as damages, it is not necessary that the exact amount in money should have been determined by the terms of an express contract. For this purpose the debt is regarded as liquidated if the amount due can be determined by mere mathematical computation."

While the exact debt owing from defendant to plaintiff, due to the breach of warranty, cannot be determined from the express terms of the contract, nevertheless the amount due, assuming liability under the warranty, can be readily determined by a mere mathematical computation. Here it can be computed by taking the total of the monies paid to the Director of Internal Revenue in satisfaction of the assessment, that is, $13,690.84 deficiency in the tax, $898.66 penalty, and $5,713.22 in interest. This total of $20,302.72 represents the amount the plaintiff paid and the amount defendant owed the plaintiff. The fact that the assessment included

6. *"Interest on judgments for liquidated debt.* In an action in the District Court of the United States for the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid."

interest from the date the tax should have been paid, April 15, 1948, to the date of assessment, July 30, 1954, does not alter the situation. Plaintiff paid an amount which included that interest and was entitled to interest on the total amount he had paid.[7] And of course the judgment itself bears interest from its date. 28 U.S.C. § 1961 (1952).

Affirmed.

WILBUR K. MILLER, Circuit Judge, dissents.

---

7. Though the assessment was paid in a series of installments over a two year period, plaintiff, as we have seen, made no attempt to recover from defendant the $1,382.35 costs of this arrangement.