**GIANT FOOD, INC., Appellant,**

v.

**JACK I. BENDER & SONS et al., Appellees.**

**JACK I. BENDER & SONS et al., Appellants,**

v.

**GIANT FOOD, INC., Appellee.**

**Nos. 12029, 12085.**

District of Columbia Court of Appeals.

Argued Dec. 15, 1977.

Decided March 19, 1979.

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

Glenn A. Mitchell, Washington, D. C., with whom Eve E. Bachrach, Washington, D. C., was on the brief, for appellant in No. 12029 and appellee in No. 12085.

Charles R. Work, Washington, D. C., with whom Tedson J. Meyers, Washington, D. C., was on the brief, for appellees in No. 12029 and appellants in No. 12085.

Before KELLY, GALLAGHER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

Giant Food, Inc. (Giant), a corporation engaged in the retail distribution of many lines of products—including the sale and installation of carpets—brought suit in the Superior Court for breach of contract. The defendants (Bender)[1] counterclaimed for breaches of contract and warranties. All of these claims pertained to the sale, installation, and replacement of carpets. After a nonjury trial, judgment was rendered in favor of Giant on its breach of contract claim, and in favor of Bender on its counterclaim based on a breach of an express warranty. The court calculated damages on both parties' claims and deducted Bender's amount from Giant's to arrive at a net damage figure for Giant. Giant now appeals this award of damages, alleging the trial court erred in three respects: (1) by denying prejudgment interest to Giant on its contract claim; (2) by basing the breach of warranty damages on the cost of the replacement carpet rather than on the cost of the original carpet; and (3) in finding as a fact that the original carpet cost $8.21 per square yard installed rather than $7.31 per square yard installed. Bender cross-appeals the trial court's finding that the open account arrangement between the parties ceased by spring 1973.

This dispute arose out of a 1968 contract between Giant and Bender for the installa-

---

1. We shall refer to the four defendants (appellees) collectively as Bender. These four are Jack Bender & Sons—in the business of owning, developing and managing commercial properties; Blake Construction Co., Inc.—also engaged in that business, managing in particular a building at 1100 L Street, N.W.; and Morton A. Bender and Stanley S. Bender—both of whom were general partners in the 12th & L Limited Partnership, which owned and operated the 1100 L Street office building.

tion of carpeting on all twelve floors of an office building at 1100 L Street, N.W. The specific type of carpet to be installed was manufactured by Seamloc Lomaloom Carpet Company (Lomaloom). Bender specified this type of carpet because it had demonstrated durability in Bender's other buildings.[2] Pursuant to the contract, Giant installed Lomaloom carpet on the first ten floors during the middle of 1970, but then determined that it would be unable to fulfill its contractual commitment to install Lomaloom on the top two floors. Consequently, Giant offered to substitute carpet manufactured by North American Mills, Inc., which Giant assured Bender was equal to or better than the quality and durability of Lomaloom carpet. Bender agreed to the substitute carpet which was completely installed by about July 11, 1970.

During 1973, this substitute carpeting began to delaminate, i. e., the nylon face and rubber backing separated, resulting in areas of buckling throughout the eleventh and twelfth floors. The 1968 contract specified that all the carpeting would be guaranteed free from defects for five years. Bender contacted Giant about the defects and asked that the defective carpeting be replaced. Giant did not initially admit or disclaim any responsibility, but attempted to place the burden on North American Mills, which refused to replace the carpeting.

Despite continued correspondence between the parties as how properly to resolve the problem, Bender solicited a bid from Giant for replacement carpeting. In doing so, Bender indicated to Giant that it had already solicited and received a bid from Georgetown Carpet Company for the same job, and that Giant should attempt to beat that bid.[3] After some negotiations, Bender signed the bid letter—dated Decem-

ber 3, 1973—accepting Giant's terms for the installation of new carpeting on the top two floors. Pursuant to the specifications of the December 3 letter, Giant installed new carpeting and requested payment by invoice dated February 1, 1974. Bender refused to pay, asserting that Giant was obliged to replace the defective carpeting pursuant to the terms of the 1968 contract. This suit followed.

The trial court found for Giant on its breach of contract claim against all defendants, based on its conclusion that the December 3, 1973 letter—signed by Bender—constituted a valid contract. Bender's failure to pay was a breach of that contract, for which Giant was entitled to the full $40,139.92 price contained in the contract. However, the court did not award Giant prejudgment interest on that amount as authorized by D.C. Code 1973, § 15–108.

Bender was successful in its counterclaim because the trial court found Giant had breached its express warranty, in connection with the 1968 contract, to Bender as to the quality, durability, and future performance of the substitute carpeting. Because Bender had received three years' use out of the five years of guaranteed nondefective use, the trial court awarded Bender damages for replacement of the carpet only for two years, or 40 percent of the cost of replacement.[4] It also awarded damages for work incidental to the removal of the defective carpeting and installation of the new carpeting in the amount of $4,675.50. Bender's damages thus totalled $20,731.50. The court then deducted this amount from Giant's award to obtain a total of $19,408.42 for Giant.

■ Giant's major contention is that the trial court erred in declining to award prejudgment interest on its liquidated claim.

---

2. Bender had previously purchased over two hundred thousand square yards of this type of carpet from Giant.

3. Bender apparently had a new tenant, the Federal Maritime Commission, scheduled to occu-

py the eleventh and twelfth floors, and needed replacement carpeting quickly.

4. This amounts to $16,056 (40% of $40,139.92, rounded off to the nearest dollar).

In its conclusions of law the trial court ruled that

> [t]he damages owed plaintiff by defendants, under the circumstances of this case, should be treated as though unliquidated, particularly in view of the fact that plaintiff *was aware of the failure of the original carpeting to last as warranted* and knew at all pertinent times that defendant had a substantial but unliquidated claim against plaintiff for the replacement of that carpeting. In the interest of justice, plaintiff should not be awarded interest.

(Memorandum Order at 10; footnote omitted.) The court cited 5 Corbin, Contracts §§ 1050, 1051 (1964), and stated its "view that D.C. Code 1973, § 15–108 should not be applied mechanically in a case of this type, *cf. Powers v. Metropolitan Life Insurance Co.,* 142 U.S.App.D.C. 95, 439 F.2d 605 (1971) (interpleader proceeding involved), and *Southern New England Contracting Co. v. State,* [165 Conn. 644], 345 A.2d 550, 560 (Conn.1974) (applying Connecticut law)."

Giant contends that its debt was liquidated and therefore falls within the language of the statute, which requires the allowance of prejudgment interest as a matter of law. The liquidated debt, it asserts, is the contract price for the replacement carpeting— $40,139.92. Giant argues that the trial court was required to award interest as fixed in the contract at a rate of 1½% per month from the date the debt was due— March 13, 1974—until the date that payment is finally made. Furthermore, it argues that the trial court erred in finding the contract did not call for compound interest.

 The relevant statute, D.C. Code 1973, § 15–108, reads, in pertinent part, as follows:

> In an action . . . to recover a liquidated debt on which interest is payable by contract or by law or usage the judg-ment for the plaintiff *shall* include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid. [Emphasis added.]

This provision applies where the action is to recover a liquidated indebtedness, in contrast to D.C. Code 1973, § 15–109 providing interest on judgments for unliquidated breach of contract claims. *See Blustein v. Eugene Sobel Co.,* 105 U.S.App.D.C. 32, 263 F.2d 478 (1959). Indeed, the language of § 15–108 mandates an award of interest if the debt is liquidated, as does the common law. *See McIntosh v. Aetna Life Insurance Co.,* D.C.App., 268 A.2d 518, 521 (1970) ("At common law, the right to receive interest on a liquidated debt accrued the date the debt was due"). The trial court, however, relied on three authorities to exercise its discretion and carve out an exception to the mandatory application of the interest statute.[5]

 The only decision in the District of Columbia cited to us as permitting an exception to the application of D.C. Code 1973, § 15–108 to a liquidated debt is *Powers v. Metropolitan Life Insurance Co.,* 142 U.S. App.D.C. 95, 439 F.2d 605 (1971). *Powers* varied the general rule that interest runs from the date of an unsatisfied demand by one entitled to the proceeds of an insurance policy, because as an interpleader action the "demand by one claimant [could not] be met without prejudicing the claim of another and thereby possibly subjecting the company to double liability . . .." *Id.* at 99, 439 F.2d at 609. As this court recently said, "[i]n that case the court carved out a very narrow exception for interpleader actions in which equitable considerations demand such a result." *Toomey v. Cammack,* D.C.App., 379 A.2d 700, 702 (1977). In *Toomey,* we refused to create a new exception, absent such overriding equitable considerations. We likewise decline to do so here. The special facts of *Powers, supra,* and the peculiar nature of interpleader actions required

---

5. See text, *supra.*

relief from the mandatory language of § 15–108; in fact, neither the insurance policy nor the statute governing payment of policy proceeds to beneficiaries contained a provision for interest, raising a question whether the statute applied in that case.[6] We have no such special circumstances here.[7]

That does not end our inquiry into the applicability of the statute in this case, however. We must still determine (1) whether the debt owed Giant was liquidated; and (2) if so, what is the amount of the "principal debt" upon which interest is allowable.

If we consider Giant's claim on its breach of contract action alone, the debt is certainly for a liquidated amount—the contract price. A question still arises, however, as to the meaning of the word "liquidated" in the statutory context. We must determine, in particular, whether Bender's counterclaim, which the court expressly found to be unliquidated, takes Giant's claim outside the scope of § 15–108. There are three general rules of law concerning the availability of interest where an unliquidated counterclaim or setoff is asserted against a liquidated claim.[8]

One of these rules, which Bender urges us to apply here, has been stated as follows: "where the liquidated demand is subject to reduction by virtue of an unliquidated claim the balance due is deemed to be an unliquidated sum upon which interest is not recoverable." *Hansen v. Covell*, 218 Cal. 622, 24 P.2d 772, 776 (1933)[9] (dictum) (citations omitted). Whether an unliquidated counterclaim bars interest on a liquidated debt usually depends on the extent of the plaintiff's breach, the conduct of the two parties, and other surrounding circumstances of the transaction. 5 Corbin, Contracts § 1051.

The rule was applied in *Excelsior Terra Cotta Co. v. Harde*, 181 N.Y. 11, 73 N.E. 494 (1905)—one of the cases principally relied upon by Bender. In that case suit was brought for the full amount of a contract price ($6,600) and to recover for extra work done (at an alleged value of $1,100). The defendants counterclaimed for damages due to defective work and delay in performance. The trial court disallowed the claim for extra work, found for the plaintiff on its contract claim, and for the defendants on their counterclaim. It awarded interest to plaintiff on the difference between the two amounts. This award of interest was struck down on appeal after being characterized as an unliquidated demand because "the contract price was subject to a reduction for damages, incapable of being ascertained as to amount and . . . the claim for extra work was in dispute." *Id.*, 73 N.E. at 494–95.

Another case principally relied upon to support the application of this rule is *Jar-*

---

**6.** In *Powers* the court correctly stated the rule that equitable considerations bear on whether interest should be allowed, in the absence of interest payable by *contract, law* or usage.

**7.** Furthermore, the trial court's reliance on both 5 Corbin, Contracts §§ 1050–51 (1964), and *Southern New England Contracting Co. v. State*, 165 Conn. 644, 345 A.2d 550, 560 (1974), is misplaced. Those sections cited in Corbin's treatise are concerned with rules pertaining to the award of interest as damages in the absence of a statute. *See* 5 Corbin, Contracts, *supra*, and cases cited therein. The opinion of the Supreme Court of Connecticut is also unpersuasive because it was not faced with a statutory provision for interest phrased in mandatory language, as here. *See Southern New England Contracting Co. v. State, supra*, 345 A.2d at 560–61.

**8.** *See generally* Annot., 3 A.L.R. 809 (1919), supplemented in Annot., 89 A.L.R. 678 (1934); 22 Am.Jur.2d *Damages* § 187 (1965); *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.*, 416 F.2d 207, 211 (8th Cir. 1969).

**9.** The defendant argued in *Hansen, supra*, 24 P.2d at 775, that "whenever a liquidated sum becomes due under a contract but which is subject to deduction by reason of an unliquidated offset, the balance due is not a sum 'capable of being made certain by calculation' because the 'person liable does not know what sum he owes, and therefore can be in no default for not paying.' *Cox v. McLaughlin*, 76 Cal. 60, 67, 18 P. 100, 104, 9 Am St.Rep. 164."

*dine Estates v. Donna Brook Corp.*, 42 N.J. Super. 332, 126 A.2d 372 (1956). In that case appellant sued for damages for failure to complete work under a building contract and for defective work performed. 126 A.2d at 374. In a second suit, appellee sought recovery of the unpaid balance due under their contract, for extra work, as well as for work and materials on another property. Appellant responded with a counterclaim, incorporating its allegations and request in the first suit. The resolution of these actions turned principally on the issue of substantial performance under the contract. Appellee was found to have substantially performed and consequently entitled to recover the full contract price less the amount to which appellant was entitled under the counterclaim. Although the contract price was a liquidated amount, the court disallowed the award of interest to appellee because the amount finally found to be due was not readily ascertainable until tried and submitted to the jury—and thus not completely liquidated. The court said, "interest should not be allowed where the damages are unliquidated and not capable of ascertainment by mere computation, or where a serious and substantial controversy exists as to the amount due under a contract." *Id.*, 126 A.2d at 377. In both of these cases, in addition to a claim for a liquidated amount—fixed in relation to a contract price—the parties whose awards of interest were disallowed had claims which sounded in quantum meruit, for extra work done. Such damages are by their very nature unliquidated and must be the subject of controversy and proof at trial.

There is little precedent supporting this rule, however, and it appears to be a minor-

ity view. A great many courts have not considered that a liquidated claim for damages becomes converted into an unliquidated debt where there is an unliquidated counterclaim or setoff. *See, e. g., Fluor Corp. v. United States ex rel. Mosher Steel Co.*, 405 F.2d 823, 830 (9th Cir. 1969) (hereinafter cited as *Fluor Corp.*).[10] *American Surety Co. of New York v. United States for B & B Drilling Co.*, 368 F.2d 475, 479–80 (9th Cir. 1966) (hereinafter cited as *American Surety*); *Tech Corporation v. Permutit Co.*, 321 So.2d 562 (Fla.App.1975); *Maslow Cooperage Corp. v. Weeks Pickle Co.*, 270 Wis. 179, 70 N.W.2d 577, 584 (1955); *Rubel v. Rubel*, 221 Miss. 848, 75 So.2d 59, 69 (1954); *Mall Tool Co. v. Far West Equipment Co.*, 45 Wash.2d 158, 273 P.2d 652, 659 (1954).

There are two other approaches: the "interest on the entire claim" rule and the "interest on the balance" rule.[11] Under the first of those approaches interest is calculated on the full amount of the liquidated claim; then, the defendant's unliquidated counterclaim is subtracted from that amount to determine the final award. *See, e. g., Hunt Foods, Inc. v. Phillips*, 248 F.2d 23, 27–28 (9th Cir. 1957); *Roddis Panel & Door Co. v. Cecil's, Inc.*, 145 F.Supp. 764, 769 (W.D.S.C.1956); *Mall Tool Co. v. Far West Equipment Co., supra*, 273 P.2d at 664; *see generally* Annot., 3 A.L.R. 809 (1919), *supplemented in* Annot., 89 A.L.R. 678 (1934). In contrast, the "interest on the balance" rule allows interest only on the difference between the amount of the plaintiff's liquidated claim and the amount of the defendant's counterclaim. *See, e. g., Matthew A. Welch & Sons, Inc. v. Bird*,

---

**10.** In that case the court said that "even though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest." *Id.*; footnote omitted.

**11.** In *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.*, 416 F.2d 207, 211–12 (8th Cir. 1969), the court refers to the existence of

four approaches, rather than three. It cites the "interest on the entire claim" rule and the "counterclaim as a discount" rule as distinct, but without explaining how they are distinguishable. We do not think a difference exists as both rules provide for interest on the full amount of the plaintiff's liquidated claim, but then reduce the plaintiff's award by the amount of the defendant's counterclaim—which is the "discount."

D.C.App., 193 A.2d 736, 739 (1963) (hereinafter cited as *Welch* ); *Fluor Corp., supra* at 830; *American Surety Co., supra* at 479; *Roddis Panel & Door Co. v. Cecil's, Inc., supra* at 769; *Rubel v. Rubel, supra,* 75 So.2d at 69; *Hansen v. Covell, supra,* 24 P.2d at 776; *see generally* Annot., 3 A.L.R. 809 (1919), *supplemented in* Annot., 89 A.L.R. 678 (1934); *see also* 1 Restatement of Contracts § 337(a) (1932).

We regard the decision of this court in *Welch, supra,* as influential but not controlling for reasons we will delineate. There, two actions were consolidated. In one action the Birds, owners of a residence, sued Welch, a plumbing contractor, for conversion of personal property and for defective performance of its contractual obligations. Welch sued for the balance due under the contract for labor and materials. The court said:

> We are of the opinion that instead of two separate suits there should have been an original suit and a counterclaim thereto; or, at pretrial, the suit by Bird against Welch should have been aligned as a compulsory counterclaim in the suit by Welch against the Birds so that the issues of fact and instructions upon the law could have been more readily given to the jury with final direction to bring in a *net* verdict.

*Welch, supra* at 739 n.7. The court also approved the award of interest to Welch on the amount found to be due it for its work, but ordered that the interest should only be computed on the net balance owed to Welch after deduction of damages due the Birds as an offset of Welch's principal amount awarded. The case does not discuss the distinction between claims for liquidated and unliquidated damages. Nor does the court rely specifically on a statutory provision for the allowance of interest. Rather, it relies on the precedent of *Tendler v. Jaffe,* 92 U.S.App.D.C. 2, 203 F.2d 14, *cert. denied,* 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344 (1953). *Welch, supra* at 739 n.6. In *Tendler,* the court considered a claim for unliquidated damages and deemed D.C. Code 1940, § 28–2708 applicable, "which provides that, in an action for breach of contract, interest shall be allowed only from the date of judgment, but that the jury *may* include interest, *as an element of damages,* where necessary fully to compensate the plaintiff." *Tendler v. Jaffe, supra* at 6, 203 F.2d at 18 (emphasis added). This case was based on a statute permitting broad discretion in determining whether to award interest. Consequently, it does not aid us in our interpretation of the present statutory language of D.C. Code 1973, § 15–108, but does show the court's equitable concern that interest should only be permitted on the net balance due.

Cases from other jurisdictions which have applied the "interest on the balance" rule also generally recognize the validity of the "interest on the entire claim" rule, and set forth the following distinction as to when each is applicable:

> Where the plaintiff's demand is liquidated he is given interest on the full amount, by treating the defendant's unliquidated demand as a discount and not as a payment, . . . [and this rule is] applicable in cases where the claim for deduction could not be said to be demandable at the time when the original liquidated claim became due, but was rather the proper subject of a counterclaim for damages than an offset in the nature of a payment.

Annot., 89 A.L.R. 678, 679 (1934) (discussing the opinion in *Hansen v. Covell, supra* ); *see, e. g., Fluor Corp., supra* at 830; *American Surety, supra* at 479–80; *Mall Tool Co. v. Far West Equipment Co., supra,* 273 P.2d at 663.

■ We must now decide whether to (1) deny prejudgment interest by treating the principal debt as unliquidated under the "conversion of liquidated claim" rule, (2) award interest on the entire claim, or (3) allow interest on the net balance. In choosing between the three approaches, we remain cognizant of the purpose to be served

in awarding interest. It is generally viewed "as compensation allowed by law for the use or forebearance of money or as damages for its improper retention." *Ralston Purina Co., supra* at 212; *see also Young v. Godbe,* 82 U.S. (15 Wall.) 562, 21 L.Ed. 250, 251 (1873).[12] In this case, Bender wrongfully withheld payment for the replacement carpeting, and thus interest should be allowed Giant because of Bender's improper detention of funds, with which Giant could have been earning money through investment or otherwise. Consequently, we are reluctant to consider Giant's liquidated claim as being converted into an unliquidated debt due to Bender's unliquidated counterclaim. It would be somewhat artificial to find the debt unliquidated where Bender, the defaulting party, knew the exact amount and terms of the contractual debt. Even where a bona fide dispute exists as to a debt, courts generally find the liquidated nature of the debt unaffected. *See, e. g., Tech Corporation v. Permutit Co., supra; Blustein v. Sobel, supra.* Furthermore, this is not a case in which substantial performance of a contract or a quantum meruit claim was at issue. *Compare Jardine Estates v. Donna Brook Corp., supra; Excelsior Terra Cotta Co. v. Harde, supra.*

 The choice between the other two rules is more difficult, but we think that the law and equities favor application of the "interest on the net balance" approach in this case. The appropriate inquiries to be made appear to be two: (1) whether the "claim for deduction [due to the counterclaim or setoff] could . . . be said to be demandable at the time when the original liquidated claim became due and thus, requiring interest on the balance";[13] or (2) whether the breach of warranty claim was "the proper subject of a counterclaim for

damages [rather] than an offset in the nature of a payment,"[14] requiring interest to be awarded on the entire claim.

Generally, the "interest on the entire claim" rule entitles the plaintiff to interest on the full amount of his claim when the counterclaim does not directly concern the plaintiff's claim, that is, when the unliquidated counterclaim arises out of a collateral matter. *Ralston Purina Co., supra* at 211. Here, Bender's unliquidated claim existed, and was demandable, long prior to the time when Giant's liquidated claim became due. Furthermore, although styled as a counterclaim for damages and based on what the trial court found was a separate transaction (*i. e.,* the 1968 contract), we think Bender's claim was an offset in the nature of a payment rather than an independent matter unconnected with Giant's claim. This is because the subject matter of both transactions involved carpeting for the eleventh and twelfth floors of the same building. Without Giant's breach of the express warranty pertaining to the 1968 contract (the first transaction), the second transaction (the 1973 contract) would not have occurred. Bender paid Giant for five years of guaranteed carpeting performance and only received three years. Bender's entitlement to the amount of its counterclaim, or setoff, is essentially based on the fact it had already paid Giant for two years of the guaranteed carpeting performance, which was subsequently provided by Giant's installation of replacement carpeting pursuant to the 1973 contract. Additionally, during the entire contested interest period, Bender was obligated to Giant for the amount of the liquidated debt. Simultaneously, however, Giant was obligated to Bender in the amount of the smaller counterclaim. Thus Giant was really only deprived of the use of money to the extent of the difference be-

---

12. In its opinion in that case the Supreme Court said: "If a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment." *Id.*

13. Annot., 89 A.L.R. 678, 679 (1934).

14. *Id.*

tween the two claims. *See Ralston Purina Co., supra* at 212–13.

Thus, we view Bender's unliquidated counterclaim, under the particular facts of this case, as an offset in the nature of a payment on the 1973 contract. Consequently, Giant is now entitled to prejudgment interest on the difference between the amount of its liquidated claim ($40,139.92) and Bender's unliquidated counterclaim— $20,731.50.[15] This leaves a total principal debt owed Giant of $19,408.42 plus interest.[16]

The next question is at what rate should interest be awarded and whether the interest should be compounded. Here again we must look to the statute first. D.C. Code 1973, § 15–108 provides that "the judgment for the plaintiff shall include interest . . . at the rate fixed by the contract, if any . . .." Under the statute, therefore, the rate of interest agreed upon and fixed by the parties in the contract controls, rather than the statutory rate of interest specified in D.C. Code 1973, § 28–3302. *See Bethlehem Steel Co. v. Lykes Bros. Steamship,* 35 F.R.D. 344 (D.D.C.1964); *Messina v. Mutual Benefit Health & Accident Ass'n,* 228 F.Supp. 865 (D.D.C. 1964), *aff'd,* 121 U.S.App.D.C. 328, 350 F.2d 458 (1965), *cert. denied,* 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966). A question arises whether the 1½ percent monthly finance charge provided by the 1973 contract was a rate fixed by the contract within the meaning of § 15–108. Although called a finance charge, rather than interest, we find the contract term a manifestation of the parties' agreement to compensate Giant for a delay in payment or for the credit extended.[17] Thus, the contractual provision governs unless contrary to law or public policy.

Appellees argue, however, that the finance charge violates the revolving credit account provisions of the District of Columbia Consumer Credit Protection Act of 1971,[18] and should, therefore, be stricken from the contract. We agree that the revolving credit provisions apply here. However, those provisions, in our view, necessitate a limitation of the finance charge (to 1% per month on the balance exceeding $500) rather than an eradication under the facts of this case. D.C. Code 1973, § 28–3702.

The purpose of the revolving credit provisions of the Act was to establish maximum credit service charge rates for revolving credit accounts including credit cards growing out of retail sales in the District of Columbia. See H.R.Rep.No.92–724, 92d Cong., 1st Sess. 6, 96–100 (1971). To effectuate this purpose, Congress authorized retail sellers to engage in arrangements with buyers whereby credit is extended in connection with the sale of goods and services on time, and limited accompanying monthly credit service charges to 1% on balances

---

15. For a discussion of the propriety of the computation of damages on the counterclaim, see text *infra*.

16. Appellees also argue that: (1) no interest is payable because an open account relationship existed between the parties (this issue is the subject of appellees' cross-appeal); (2) the parties' course of dealing shows that they never intended interest be paid. The trial court specifically found as a fact that the open account relationship had terminated some months prior to the December 1973 contract. On the record before us, we do not think that this finding was either clearly erroneous or without evidence to support it. *See* D.C. Code 1973, § 17–305(a); *Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health & Welfare Trust,* D.C.App., 310 A.2d 604 (1973). In light of the record, and that finding particularly, we also reject appellees' contention that the parties' course of dealing established that the interest provision was never intended to be effective.

17. For purposes of the usury laws, of course, a finance charge is not considered interest. *See, e. g., Kass v. Central Charge Service, Inc.,* D.C. App., 304 A.2d 632 (1973).

18. Pub.L.No.92–200, § 4, 85 Stat. 668 (1971), *codified in* D.C. Code 1973, § 28–3801–02.

exceeding $500.[19] D.C. Code 1973, § 28–3702. Interestingly, the revolving credit provisions were enacted in response to creditor, not consumer pleas, to insure that credit extensions in connection with retail sales remained outside the usury laws. *See* Ralph J. Rohner, *Holder in Due Course in Consumer Transaction: Requiem, Revival or Reformation*, 60 Cornell L.Rev. 503, 539 (1975).

While the legislative history is scant, there is no indication that the revolving credit provisions were designed to reach consumption by a natural person while excluding purchases by a commercial entity.[20] Significantly, the provisions define a "buyer" as a person (*including corporations*, partnerships, association or any other group of persons however organized) who buys goods or obtains services from a seller pursuant to a retail credit sale and not principally for the purpose of resale. D.C. Code 1973, § 28–3701(4), (5). The statutory language appears broad enough to encompass the Giant-Bender transaction which was essentially a credit sale with Bender intending to *use*, not sell, the carpets.

▆▆▆ The trial court specifically found that the December 3, 1973 contract[21]

did not call for compound interest. Appellant does not argue that the trial court's finding is "plainly wrong or without evidence to support it." D.C. Code 1973, § 17–305(a). Rather, it argues that the statute and the contract require the award of compound interest, presumably as a matter of law. We cannot say the trial court erred. Prejudgment and judgment interest are ordinarily not compounded in the absence of contract provision. Dobbs, Remedies § 3.5 at 164 (1973). The statute refers specifically to awarding interest on the "principal debt." We have just concluded that the principal debt is the net balance owing Giant. Furthermore, where the contract does not specifically require compound interest, we are reluctant to imply such a term absent a showing of agreement between the parties, particularly a term in aid of the party that drafted the writing. *See* 5 Corbin, Contracts § 1047 (1951); McCormick, Damages § 53 (1935).

There is no dispute as to when the interest commences—on March 13, 1974, thirty days after the debt's maturity date, as specified by the 1973 contract. There is disagreement, however, as to how long that interest continues to be computed. Appellant relies on the statutory language again,

---

**19.** D.C. Code 1973, § 28–3701(1) defines "revolving credit account" as

an arrangement between a seller or financial institution and a buyer pursuant to which (A) the seller may permit the buyer to purchase goods or services on credit either from the seller or by use of a credit card or other device, whether issued by the seller or a financial institution, (B) the unpaid balances of amounts financed arising from purchases and the credit service and other appropriate charges are debited to an account, (C) a credit service charge if made is not precomputed but is computed on an outstanding unpaid balance of the buyer's account from time to time, and (D) the buyer has the privilege of paying the balances in full or in installments. D.C. Code 1973, § 28–3701(2) defines "credit service charge" as

the sum of (A) all charges payable directly or indirectly by the buyer and imposed directly or indirectly by the seller as an incident to the extension of credit, including any of the following types of charges which are applicable; time price differential, service, carrying

or other charge, however denominated, premium or other charge for any guarantee or insurance protecting the seller against the buyer's default or other credit loss; (B) charges incurred for investigating the collateral or credit-worthiness of the buyer or for commissions or brokerage for obtaining the credit, irrespective of the person to whom the charges are paid or payable, unless the seller had no notice of the charges when the credit was granted.

**20.** The revolving credit provisions, in fact, are contained in a chapter separate from the consumer protections. *See* D.C. Code 1973, § 28–3801 *et seq.* Chapter 38—Consumer Protections includes separate provisions for consumer credit sales.

**21.** Although the trial court referred to the agreement of November 29, 1973, this was an apparently mistaken reference to the December 3, 1973 contract. The former document contained the identical finance charge language, but different prices.

which reads "the judgment for the plaintiff shall include interest on the principal debt from the time it was due and payable . . *until paid.*" D.C. Code 1973, § 15–108 (emphasis added). Appellee contends that "[i]t would be inequitable to allow interest to run during the delay in payment occasioned by Plaintiff's appeal." [22] This argument is not persuasive because appellee could have, and perhaps should have, paid Giant the amount awarded by the trial court—$19,-408.42.[23] That would have prevented incurring any more interest on the principal debt pending our decision.

 As a general rule, an adversary's appeal does not, by itself, dispense with the formality of a tender to stop the running of interest. *See generally* Dobbs, Remedies, *supra* at 176–78; Annot., 4 A.L. R.3d 1221, 1234 (1965). Absent waiver or conduct estopping the creditor from claiming interest pending appeal, the creditor should not be penalized for seeking to increase the award in his favor, particularly where the debtor also appeals.[24] *See* Annot., 15 A.L.R.3d 411 (1967). Denial of interest would further encourage delay in payment of liquidated claims, thus permitting free use of the money for the period consumed by the appeal and reading an exception into § 15–108. Being deprived of the use of money during appeal, Giant is entitled to interest on the balance until paid.

 The trial court, having awarded no prejudgment interest, awarded Giant "interest at the rate provided by law from the date of judgment [January 31, 1977] . . . ." Although not specifically mentioned by the trial court this award was

presumably made pursuant to D.C. Code 1973, § 15–109, which provides, in pertinent part, that "[i]n an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only." Section 15–109 is inconsistent with Section 15–108 to the extent that it authorizes interest only on the judgment from the date of judgment, rather than on the principal amount due from the date due until the date paid. We think this inconsistency is due to the difference in applicability of the two provisions. Section 15–108 eliminates the traditional distinction between prejudgment interest and interest on the judgment itself in cases involving a liquidated debt where interest is payable by contract law, or usage. *See, e. g., Kiser v. Huge,* 170 U.S.App.D.C. 407, 517 F.2d 1237 (1974); *Rosden v. Leuthold,* 107 U.S.App. D.C. 89, 274 F.2d 747 (1960) (applying D.C. Code 1951, § 28–2707, the predecessor provision to § 15–108). Section 15–109 is applicable to, *inter alia,* contract actions where no liquidated debt exists or where interest is not payable by contract or by law or usage. Inasmuch as we have already found § 15–108 applicable here, we conclude that monthly interest should be allowed at the rate of 1½% on the first $500 and 1% on the remaining balance until paid. *See Kiser v. Huge, supra,* 170 U.S.App.D.C. at 421–23, 517 F.2d at 1251–53. *But see Blustein v. Eugene Sobel Co., supra,* 105 U.S.App.D.C. at 37, 263 F.2d at 483 (applying § 15–108's predecessor provision, D.C. Code 1951, § 28–2707 and 28 U.S.C. § 1961 (1952)). Thus, Bender must pay Giant the principal debt plus interest from the date the debt was due (March 13, 1974) until this judgment is satisfied.

22. Brief for Appellee at 28 n. 13.

23. This appeal in no way could have resulted in a lesser amount being awarded, as all of appellant's arguments are directed to increasing the trial court's award.

24. The outcome of the creditor's appeal may, however, determine whether interest runs from the trial court award or only from the date that an award modified on appeal is made effective.

When a judgment creditor unsuccessfully seeks to increase his award, most courts would suspend the running of interest for the appeal period. In contrast, when an award for the creditor is modified on appeal, interest is generally allowed during the interim. *See* Annot., 4 A.L.R.3d 1221 (1965); Annot., 15 A.L.R.3d 411 (1967).

 The next issue raised by appellant is whether the trial court correctly based breach of warranty damages on the cost of the replacement carpet, rather than on the cost of the original carpet. Under both statutory and decisional law the settled standard for recovery in a situation such as this is "the difference between the actual value of the article sold and what it would have been worth had it been as warranted . . . [plus] those damages which were the natural consequence and proximate result of . . . [the] conduct [of the party who breached the warranty]." *Meyers v. Antone,* D.C.App., 227 A.2d 56, 58 (1967); *e. g.,* D.C. Code 1973, § 28:2–714; *Talley v. Campbell Music Co.,* D.C.App., 219 A.2d 852, 854 (1966); *Fries, Beall & Sharp Co. v. Livingstone,* 56 App.D.C. 209, 211, 12 F.2d 150, 152 (1926). The trial court was correct in measuring the damages by the amount required to make the carpeting conform to the warranty, *i. e.,* the cost of replacing the defective carpeting.[25] *See, e. g., id.* To have awarded Bender damages based on the original carpet's cost would not have placed Bender in the same position it would have been in had the carpeting been as warranted.[26]

We reverse the trial court's determination that no prejudgment interest should be awarded and order that, on remand, the trial court enter judgment for Giant for the principal sum of $19,408.42 plus interest on that sum from March 3, 1974 until this judgment is satisfied.

*Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.*

---

25. In light of this finding we do not reach the issue of whether the trial court was plainly wrong in finding that the original carpet had cost $8.21 per square yard installed, rather than $7.31. Only if we had found Giant correct in its contention that the proper measure of damages was the price of the original carpeting would we need to decide that.

26. The fact that the second carpet cost more does not, by itself, demonstrate superiority to the original carpet, had it been as warranted. The trial court implicitly found that the replacement was a reasonable one—*i. e.,* it was of substantially the same style, grade and character as that for which Bender had originally contracted.