**HARBOR INSURANCE COMPANY,**
**Plaintiff,**

v.

**SCHNABEL FOUNDATION COMPANY,**
**et al. Defendants.**

**Civil Action No. 87–2212 (HHG).**

United States District Court,
District of Columbia.

July 29, 1997.

Robert E. Heggestad, Heggestad & Weiss, Washington, DC, for Plaintiff.

Alexander W. Whitaker, Bethesda, MD, for Defendants.

*OPINION*

HAROLD H. GREENE, District Judge.

This action between plaintiff Harbor Insurance Company ("Harbor") and defendant Schnabel Foundation Company ("Schnabel"), was retried to the Court following remand by the Court of Appeals.

Harbor, subrogee of OMNI Construction, Inc. ("OMNI"), brought this action against Schnabel for professional negligence. In an Opinion dated April 4, 1997, this Court found that defendant Schnabel, OMNI's subcontractor, had been negligent in its installation of the sheeting and shoring system at an office building at 601 Pennsylvania Avenue, N.W. The Court adjudged Schnabel liable for the damages its negligence caused to the Sears Building, located at 633 Pennsylvania Avenue, N.W., but required further briefing from the parties on the issue of damages.

OMNI, the general contractor at the 601 Pennsylvania Avenue site, incurred substantial costs in repairing the damage to the Sears Building. OMNI submitted these claims to Harbor, its umbrella liability insurance carrier, as these costs were incurred. In the coverage dispute between Harbor and OMNI, this Court ordered that Harbor pay OMNI $844,199.60, plus post-judgment interest in the amount of $65,826.91, attorneys' fees in the amount of $54,876.88, and prejudgment interest in the amount of $65,904.31. The total amount paid by Harbor to OMNI was $1,030,727.17.

The parties have entered into a settlement agreement with respect to the damages for repair costs to the Sears Building.[1] Still in dispute, however, is Harbor's entitlement to attorneys' fees and prejudgment interest accruing upon its claims for the reasonable cost of repair of the Sears Building.

**I**

*Prejudgment Interest*

District of Columbia law provides that "[i]n an action ... to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid." D.C.Code § 15–108. The award of prejudgment interest on liquidated debts is mandatory as a matter of law. *Giant Food, Inc. v. Jack I. Bender & Sons,* 399 A.2d 1293, 1305 (D.C.1979).[2] A debt is liquidated if "at the time it arose, it was an easily ascertainable sum certain." *Kiser v. Huge,* 517 F.2d 1237, 1251 (D.C.Cir.1974), *rev'd on other grounds,* 517 F.2d 1275 (1975)(en banc).

Harbor is entitled to prejudgment interest on the reasonable cost of repairs to the Sears Building, as well as the amounts paid for profit and overhead, because these sums are "liquidated debt[s] on which interest is payable by contract . . . ." From the onset of litigation, the parties stipulated that $978,208.60 was the reasonable amount for repair of the Sears Building. These amounts were easily determinable at the time they arose, when OMNI submitted the claims to Harbor. They did not fluctuate during the course of the litigation. *See Hartford Accident & Indemnity Co. v. District of Columbia,* 441 A.2d 969, 974 (D.C.1982). The amount paid to OMNI for overhead and profit was precisely determinable as well. This sum was calculated as a portion of the reasonable cost of repair according to specified percentages. The only contested issue throughout the two trials was Schnabel's liability for the damage to the Sears Building. The fact that Schnabel disputed the validity of these claims does not affect whether prejudgment interest is to be awarded. *Giant Food, Inc.,* 399 A.2d at 1302.

---

1. As a result, the Court need not decide whether Harbor is entitled to the amount Harbor and OMNI's other insurance carrier, American Insurance Company ("American"), paid OMNI as part of reimbursement of its claims, i.e. a 10% charge for overhead ($90,910.14) and a fee of 7.5% ($75,000.86).

2. Prejudgment interest is "generally viewed 'as compensation allowed by law for the use or forbearance of money or as damages for its improper retention.'" *Giant Food, Inc.,* 399 A.2d at 1302 (quoting *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.,* 416 F.2d 207, 212 (8th Cir.1969)).

Interest was payable on this debt pursuant to the Subcontract Agreement between OMNI and Schnabel, which incorporated by reference the General Conditions of the Contract for Construction ("Contract Documents") between OMNI and Westminster Investing Corp. ("Westminster"), a real estate development company.[3] Accordingly, prejudgment interest is mandated under section 108.

Prejudgment interest is calculated from the date the liquidated debts became due and payable. D.C.Code § 15–108. Article 6.e. of the Subcontract Agreement between OMNI and Schnabel provided that "all liability provisions of this Subcontract shall be paid upon demand." OMNI demanded this payment from Schnabel by letter dated August 31, 1984 and by the filing of this action on August 25, 1987. Thus for the claims submitted on August 28, 1986, November 19, 1986, May 21, 1987, and July 14, 1987 prejudgment interest commences on August 25, 1987. For the claims submitted at a later time which were in dispute, prejudgment interest will commence from the date of the agreement by which these disputed claims were resolved. Thus for claims agreed to on August 25, 1987, interest commences on September 24, 1987 and for claims agreed to on January 11, 1988 prejudgment interest commences on February 10, 1988 (the dates on which these sums became due and payable).

## II

### Attorneys' Fees

■ Harbor also seeks attorneys' fees. First, Harbor argues that Schnabel must reimburse Harbor for the $54,876.88 Harbor paid to OMNI for investigating and settling Sears' claim. Second, Harbor claims that is entitled to recover $653,747 in attorneys' fees and costs that Harbor incurred in this proceeding.

In the original coverage case, Harbor paid OMNI $54,876.88 in attorneys' fees: $41,093 in legal fees from negotiating a settlement with Sears and $13,783.88 in fees incurred by investigating Sears' claim for damages. This Court found that the insurance policy between Harbor and OMNI required that Harbor bear these costs. Schnabel argues that Harbor is not entitled to these amounts because these fees were not incurred by OMNI in prosecuting its claims against the party which caused the loss, but in establishing its right to coverage under its insurance policy with Harbor. The Court disagrees. These fees would be recoverable by OMNI in connection with litigating a claim based on Schnabel's negligence and are recoverable by Harbor as OMNI's subrogee.

■ Harbor also requests attorneys' fees involved in litigating this action. The general rule is that attorneys' fees are not recoverable as damages unless provided for by contract or statute. Attorneys' fees are recoverable in an action to establish a right of indemnity, however, if an agreement between the parties so provides. *Dillingham v. Associated Insulation Co.,* 649 F.2d 1322, 1328 (9th Cir.1981).

The Subcontract Agreement in this case requires Schnabel to indemnify OMNI against property damage caused in whole or in part by Schnabel's negligence. Article 6.c. provides:

> If, as a result, in whole or in part, of negligence ... of Subcontractor, his employees, agents, or lower-tier Subcontractors ... any property is damaged, lost or destroyed, Subcontractor assumes the liability therefor and agrees to hold OMNI ... and its agents, servants, employees and sureties harmless therefor.

The Subcontract also incorporates the indemnification clause in the General Conditions of the Contract for Construction (the "Contract Documents") between OMNI and Westminster. Article 1.b. of the Subcontract Agreement states "[s]ubcontractor shall assume all obligations, risks and responsibilities which

---

3. OMNI and Westminster entered into this agreement for construction of the office building and underground parking garage at 601 Pennsylvania Avenue. Provision 7.8.1 of this agreement provides that "[p]ayments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing at the place of the Project."

OMNI has assumed towards Owner in the Contract Documents."

In the indemnification clause of the OMNI–Westminster Contract Documents, OMNI agrees to indemnify Westminster

> against all claims, damages, losses and expenses, *including but not limited to attorneys' fees,* arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss, or expense ... is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) ... and is caused in whole or in part by any negligent act or omission of ... any Subcontractor .... (emphasis added).

Thus, Schnabel assumed the same obligation OMNI owed to Westminster: Schnabel agreed to indemnify OMNI against any attorneys' fees incurred in whole or in part from Schnabel's negligence.[4]

The Court finds that the terms of Schnabel's agreement with OMNI require that Schnabel reimburse OMNI for attorneys' fees incurred in a suit to enforce the indemnity provisions. The indemnification provisions are quite broad. Read together, the agreements require that Schnabel indemnify OMNI for any claim, damage, loss or expense, including attorneys' fees, provided that Schnabel's negligence caused the claim, damage, loss or expense to arise. Harbor's expenses in litigating this action also resulted from Schnabel's negligence. Schnabel did not admit liability. Thus, Harbor had to institute this action to establish that Schnabel's negligence caused the damage to the Sears Building. It is reasonable to infer that, given the broad and specific language of the indemnification provisions, the parties intended that Schnabel would be liable for attorneys' fees expended in the course of a suit to enforce the indemnity provisions. *See, e.g., Chesapeake and Potomac Telephone Company of Virginia v. Sisson and Ryan, Inc.,* 234 Va. 492, 362 S.E.2d 723, 729 (1987). Harbor, as OMNI's subrogee, is en-

titled to reimbursement for its reasonable attorneys' fees incurred in pursuing its indemnity claim.

 Harbor has submitted proof of its attorneys' fees and costs. Schnabel argues that these submissions are insufficient to establish that Harbor's fees and costs, in excess of $650,000, are fair and reasonable. The Court disagrees. Under District of Columbia law, when a contract includes an attorneys' fees provision the Court has the discretion to decide the means of proof necessary to establish the appropriate amount. *Nolan v. Nolan,* 568 A.2d 479, 490 (D.C. 1990). This Court has presided over this action since it was filed twelve years ago. Given the Court's familiarity with the details of the case, no further submissions or testimony regarding the nature or extent of services rendered will be required.

Harbor has submitted sufficient information to establish that the attorneys' fees and costs claimed are fair and reasonable, including time sheets and invoices. This lengthy submission is more than adequate to justify an award for Harbor for this amount.

### III

### *Pretrial Ruling*

 In conclusion, the Court will address Schnabel's argument that Harbor's claim for prejudgment interest and its claim for attorneys' fees both are foreclosed by the Court's pretrial ruling barring Harbor's breach of contract claims. In a Memorandum and Order dated April 17, 1996, the Court ruled that because Harbor had not appealed the jury's verdict for Schnabel on that issue it could not present its breach of contract claim for retrial.

Schnabel misconstrues the Court's ruling. The Court ordered that Harbor could not present its claim that Schnabel had breached its obligations under the Subcontract. However Harbor's claims for prejudgment inter-

---

4. Despite Schnabel's arguments to the contrary, it is clear that Schnabel's negligence caused the "destruction of tangible property." The Court found that Schnabel's negligence in installing the sheeting and shoring system caused considerable

damage to the Sears Building. It is this damage for which Schnabel was found liable and from which Harbor's attorneys' fees claim arises. The damage to the contract Work has never been an issue in the litigation.

est and attorneys' fees arise *under* the Subcontract rather than from a claim that Schnabel breached it. By the terms of the indemnification provisions in the Subcontract and Contract Documents (incorporated by the Subcontract) Schnabel agreed to reimburse OMNI for damages and expenses resulting from or caused by Schnabel's professional negligence. Schnabel's liability for prejudgment interest and attorneys' fees does not stem from Harbor's breach of contract claim. As a result, the Court's Order does not preclude Harbor's recovery for prejudgment interest or attorneys' fees.

An Order consistent with the above is being issued contemporaneously herewith.

### ORDER

In accordance with the Opinion issued on April 4, 1997, and with the Opinion issued contemporaneously herewith, it is this 27th day of July, 1997

ORDERED that judgment be and it is hereby entered against defendant Schnabel Foundation Company ("Schnabel") and in favor of plaintiff Harbor Insurance Company ("Harbor"); and it is further

ORDERED that judgment be and it is hereby entered in favor of plaintiff Harbor in the amount of $54,876.88 in reimbursement for attorneys' fees paid by Harbor to OMNI for investigating and settling the Sear's claim; and it is further

ORDERED that pursuant to the Subcontract Agreement and Contract Documents judgment be and it is hereby entered in favor of plaintiff Harbor in the amount of $603,150 in attorneys' fees and $50,597 in costs incurred in connection with this action; and it is further

ORDERED that defendant Schnabel shall pay Harbor prejudgment interest at the statutory rate of 6% on claims for repair costs stipulated to be reasonable by Schnabel and on the amounts paid to OMNI for profit and overhead, based on the following amounts and dates:

| Claim | + 10% overhead | Total | Date Interest Commences |
|---|---|---|---|
| $124,994.58 | $12,499.46 | $137,494.04 | 8/25/87 |
| $ 77,167.89 | $ 7,716.79 | $ 84,884.68 | 8/25/87 |
| $ 50,849.95 | $ 5,085.00 | $ 55,934.95 | 8/25/87 |
| $ 41,474.88 | $ 4,147.49 | $ 45,622.37 | 8/25/87 |
| $185,468.29 | $18,546.83 | $204,015.12 | 9/24/87 |
| **7.5% fee mark up on total claim** | | $ 39,596.34 | 9/24/87 |
| $198,253.83 | $12,914.58 | $211,167.59 | 2/10/88 |
| **7.5% fee mark up on final claim** | | $ 39,596.34 | 9/24/87 |